425 P.2d 773

**SALT LAKE CITY, a municipal corporation, Plaintiff,**

**v.**

**Stewart M. HANSON, Judge of the District Court of Salt Lake County, State of Utah, Defendant.**

**No. 10802.**

Supreme Court of Utah.

March 21, 1967.

Homer Holmgren, Salt Lake City Atty., for plaintiff.

No appearance for defendant.

CROCKETT, Chief Justice.

Salt Lake City seeks an adjudication that an order of Defendant District Judge dismissing seven cases on appeal from the City Court of Salt Lake City to the District Court was improper. The City contends that his act was arbitrary and an abuse of judicial power which is remediable under Rule 65B(b) (2), U.R.C.P.[1]

1. Rule 65B(b) (2), U.R.C.P., provides that "Appropriate relief may be granted: * * * (2) Where an inferior tribunal * * * has exceeded its jurisdictions or abused its discretion; * * *." This is comparable to the common law writ of certiorari, used to correct an abuse of judicial power. See also Page v. Com-

The defendants in the cases mentioned had been charged with violating various Salt Lake City ordinances upon complaints made before a city judge by an officer having information about the alleged offenses, but not by the officer who made the arrest. The signing by both the complainant and the city judge was by stamped signatures. The orders of dismissal contain no statement of the reason for dismissal.

The objections to the complaints in question which have been suggested as reasons for the dismissal are: (1) the stamped signatures; and (2) that the complaint was not signed by the arresting officer who knows the facts.

### Type of Signature Required

 In regard to a signature, it is the intent rather than the form of the act that is important. While one's signature is usually made by writing his name, the same purpose can be accomplished by placing any writing, indicia or symbol which the signer chooses to adopt and use as his signature and by which it may be proved: e. g., by finger or thumb prints, by a cross or other mark, or by any type of mechanically reproduced or stamped facsimile of his signature, as effectively as by his own handwriting.[2]

mercial National Bank of Salt Lake City, 38 Utah 440, 112 P. 816 (1911).

**2.** See McGrady v. Munsey Trust Co., 32 A.2d 106 (D.C.Mun.App.1943); State ex

### Who Must Sign Complaint

 The procedure for initiating a misdemeanor case is by filing a complaint before a magistrate who issues a warrant of arrest (Sec. 77–12–1, U.C.A.1953); or by the making of an arrest without a warrant if the offense is committed or attempted in the officer's presence (Sec. 77–13–3 [1], U.C.A.1953). Whichever procedure is used initially the requirements that the complainant appear before a magistrate (Sec. 77–11–2, U.C.A.1953) and that the complainant be examined under oath (Sec. 77–11–3, U.C.A.1953) are the same. No complaint is made on this appeal that this latter was not done.

 The argument on behalf of the defendant judge is that inasmuch as Sec. 77–13–3(1) provides for arrest without a warrant only when the misdemeanor is committed or attempted in the officer's presence, it follows that only the arresting officer has authority to sign the complaint. The answer to this is that the section just referred to is dealing with the subject of making arrests and not with the filing of complaints, whereas the subject of filing complaints is dealt with in Sec. 77–11–2, U.C.A., which provides:

Every person who has *reason to believe* that a crime or public offense has been

rel. Independent School Dist. No. One v. Williamson, 352 P.2d 394 (Okla.1960); Maricopa County v. Osborn, 60 Ariz. 290, 136 P.2d 270 (1943); 80 C.J.S. Signatures §§ 7, 9.

committed must make complaint against such person before some magistrate having authority to make inquiry of the same. (Emphasis added.)

We can see no reason for believing that this statute refers only to felonies as has been urged. It speaks of crimes and public offenses plainly and unequivocally without making any differentiation, which undoubtedly would have been made had that been the intent. Anyone having any acquaintance with the practical operation of law enforcement will appreciate the impracticability of requiring the witness signing the complaint to know all of the facts of the crime. Even in minor crimes it often happens that various aspects thereof must be proved by several different witnesses. The legislative enactment wisely and appropriately requires only that a person having "reason to believe" that a crime or public offense has been committed must sign the complaint.[3]

*Failure to State Reasons*

The City also complains of the arbitrariness and impropriety of the defendant judge's dismissal of the cases in question without stating any reason therefor. Attention is called to Sec. 77–51–4, U.C.A.1953, which provides that when a criminal action is dismissed, " * * * [t]he reasons for the dismissal must be set forth in an order entered upon the minutes." Because of the nature of criminal proceedings, and because they are in the interests of and for the protection of the public, there is a sound basis in public policy for requiring the judge who assumes the serious responsibility of dismissing a case to set forth his reasons for doing so in order that all may know what invokes the court's discretion and whether its action is justified.[4]

We conclude that the court erred in dismissing the seven cases in question. We therefore comply with the request in his memorandum submitted to this court: "If I am wrong, kindly reverse me." In conformity with this request, the order of dismissal is therefore "kindly" reversed. No costs awarded.

TUCKETT, J., concurs.

ELLETT, Justice (concurring):

I concur in the opinion of Mr. Chief Justice Crockett, but would like to add a few thoughts of my own in view of the brief filed by amicus curiae. It is contended that there must be the same effect given to the statute regarding the filing of a crimi-

3. For cases so holding under similar statutes see State v. Morris, 98 N.H. 517, 103 A.2d 913 (1954); see also State v. Diggins, 92 R.I. 341, 168 A.2d 469 (1961).
4. For a good statement concerning the court's duty under similar statute to justify such an action, see People v. Winters, 171 Cal.App.2d Supp. 876, 342 P.2d 538 (1959); see also People v. Gonzales, 235 Cal.App.2d Supp. 887, 46 Cal.Rptr. 301 (1965); and People v. Shaffer, 182 Cal. App.2d 39, 5 Cal.Rptr. 844 (1960).

nal complaint that is required in an arrest made without a warrant in misdemeanor cases. Let us examine the statutes set out in the Code, U.C.A.1953. Section 77–11–2 states:

> Every person who has reason to believe that a crime or public offense has been committed must make complaint against such person before some magistrate having authority to make inquiry of the same.

This refers to the making of a complaint to get the magistrate to act towards bringing a law violator to justice.

The next section is as follows:

> When a complaint is made before a magistrate charging a person with the commission of a crime or public offense, such magistrate must examine the complainant, under oath, as to his knowledge of the commission of the offense charged, and he may also examine any other persons and may take their depositions.

The section which amicus curiae claims to control the sections above set forth is 77–13–3(1), U.C.A.1953, which provides:

> A peace officer may make an arrest in obedience to a warrant delivered to him; or may, without a warrant, arrest a person:

> (1) For a public offense committed or attempted in his presence.

I utterly fail to see any connection between this latter section and the two former ones. The law has always been jealous of a person's liberty before he is convicted of any crime, and so an arrest without warrant is hedged about with safeguards to prevent unlawful detention. The fact that a man may not be arrested without a warrant save when he commits criminal acts in the presence of the arresting officer is no authority to prevent an inquiry by judicial means to determine if a crime has, in fact, been committed.

This point was raised by the defendant in the Court of Appeals of Ohio in the case of State v. Steele, 95 Ohio App. 107, 117 N.E.2d 617. The court disposed of this contention in the following language at page 618:

> In regard to the first issue, there is no connection between the knowledge which a police officer without a warrant must possess in order to make an arrest for the commission of a misdemeanor, and the amount of knowledge sufficient for him to have in order to sign an affidavit for the issuance of a warrant to arrest. Police officers may arrest for the commission of a misdemeanor without a warrant only where the offense was committed in their presence. We are not here considering the civil liability of a person making an affidavit for the issuance of a warrant to arrest. So far as the sufficiency of the affidavit is concerned, in a criminal pro-

ceeding the person making it need not have any personal knowledge of the facts alleged or have seen any of the acts committed.

The reasons given by the trial judge for dismissing the various complaints can be understood best by setting forth the transcript of the proceedings in his court:

## PROCEEDINGS

THE COURT: Now as to these City appeals cases I am going to read you a little statute and give you the shock of your life.

"77–11–3. Complainant to be examined: When a complaint is made before a magistrate charging a person with the commission of a crime or public offense, such magistrate must examine the complainant, under oath, as to his knowledge of the commission of the offense charged, and he may also examine any other persons and may take their depositions."

It appeared from every complaint on file here that the complaining witness is a Mr. McMarty or Catmull, that none of them were sworn to before the judge, that all of the complaints are stamped with a facsimile stamp, and each one of these appeals will be dismissed.

MR. ALLRED: Can I say something? In everyone [sic] of them they take them all before the Court and they are sworn to before the judge under oath.

THE COURT: Yes, but McMarty isn't the officer making the arrest, and he couldn't possibly know except by hearsay, and if you want to do it right, do it right. They are all dismissed.

It seems that the judge at first thought the complaints were not sworn to, but when informed to the contrary, he was of the opinion that the complaining witness had to know the facts. This is not the law.

In each of the dismissed cases the complaints were signed under a positive oath and not on information and belief. The charging part of the complaint against J. K. W. is set forth as an example of all of them. It is as follows:

M. Dean Catmull of Salt Lake City, in the County of Salt Lake, State of Utah, on behalf of said City, on oath complains that the above named defendant whose other and true name is to complainant unknown, of Salt Lake City, in the County of Salt Lake and State of Utah, on 9–3–66, at approx. 1:15 a. m., at Salt Lake City, in the County of Salt Lake and State aforesaid, unlawfully did commit the public offense of VIOLATING A CITY ORDINANCE, as follows, to-wit:

SPEEDING—Operating a motor vehicle at an improper and unlawful speed, to-wit: 55 mph in a 35 mph zone. Loc: Approx. 2100 to 1900 South State Street.

contrary to the provisions of Section 117

of the Revised Ordinances of Salt Lake City, in such cases made and provided.

The statute requires a complaint in writing to be made to the magistrate. (Sec. 77-10-1, U.C.A.1953.) It also provides that the magistrate must examine the complainant under oath. This can be done orally or in writing; and if a positive oath be taken and the magistrate be satisfied therewith, it is no defense to the accused that the complaining witness only knew the facts by hearsay.

The case of Moss v. State reported in 4 Okl.Cr. 247, 111 P. 950, was a misdemeanor case where the information (complaint) was signed by the county attorney upon information and belief although the affidavit was in positive form. At page 952 the court said:

> During the trial of the cause it developed that said enforcement attorney had no personal knowledge of the matters charged, and that his only information with respect thereto was obtained from the report of said Burwick and Fenton. When this fact was developed, plaintiff in error filed a motion to quash the information on that ground, alleging that he did not know, until it was shown by the testimony given in the course of the trial, that the person who verified the information had no personal knowledge of the facts charged. The court overruled this motion, and the ruling is assigned as error.

We think there was no error in the court's ruling. An information which is not verified at all, or which on its face shows that it is verified only on information and belief, should be quashed or set aside on a timely motion for that purpose, for the reason that such verification constitutes no sufficient showing of probable cause. But, where the information is verified in positive terms as true, it constitutes a showing of probable cause, even though it may subsequently develop that the affiant had no personal knowledge of the facts alleged. Such verification makes a prima facie showing, which is all that is required; and on a motion to quash no issue can be made as to the knowledge or want of knowledge of the person who verified the information.

In the case of Bergdahl v. People, 27 Colo. 302, 61 P. 228, at page 230, it is said:

> Each of these informations was verified, to the effect that the facts stated in the information are true, and that the offenses therein charged were committed to the personal knowledge of the affiant. * * *

In support of the second ground, attacking the sufficiency of the verifications of these informations, it is urged that, inasmuch as the testimony disclosed that the party who verified them did not have personal knowledge of the guilt of the plaintiffs in error, therefore they were not properly verified. Whether or not an af-

fidavit upon which an information is based complies with the statute must be determined from the context of the affidavit itself, and its statements cannot be attacked by extraneous evidence.

In the Wisconsin case of State v. Davie, 62 Wis. 305, 22 N.W. 411, at page 412, the court stated:

In reference to the authorities that may hold that in all cases before an accused person can be arrested for crime a complaint must be made in positive terms, and by a person who knows of all the facts constituting the offense, we are free to say that they are unreasonable, if nothing more. There would be, and could be, very few arrests under such a rule. Crime frequently rests upon circumstantial evidence, and very numerous facts in the knowledge of numerous persons, and all such witnesses could not be speedily and summarily brought before the magistrate to make complaint, and they could not be compelled to do so if they could be found. A complaint is not a conviction, any more than an information or indictment, and the accused should not be fully tried upon all the evidence before he is arrested, and his case prejudiced thereby.

The indictment or information is a mere charge of an offense, and why should a complaint before a magistrate be anything more to warrant the arrest of the accused? The rule contended for would make the execution of the criminal laws impracticable if not impossible, and many offenders would escape justice. It would be a very humane and safe rule for the criminal, but cruel and unsafe for society. The complainant may be in possession of such facts, by information or otherwise, as would give him good reason to believe that a certain person had committed an offense, and the persons who have knowledge of the facts of the crime may be either unable or unwilling to make complaint. What shall be done? Our statute sufficiently guards and protects the rights of accused persons, and, if strictly followed, there will be no danger of wanton or causeless arrests, and it is by our own statute that this complaint is to be tested. The language is: "Upon complaint made to any justice of the peace by any constable, or other person, that any such offense has been committed within the county, he shall examine the complainant on oath, and the witnesses produced by him, and shall reduce the complaint to writing, and cause the same to be subscribed by the complainant, * * *." * * *

For the reasons above stated, I concur in the opinion of Mr. Chief Justice Crockett.

HENRIOD, Justice (dissenting):

I dissent, since I think the main opinion completely has missed the fundamental issue in this case.

The trial court in its very first sentence said "I am going to read you a little statute and give you the shock of your life: '77–11–3. Complainant to be examined: When a complaint is made before a magistrate charging a person with the commission of a crime or public offense, such magistrate *must examine the complainant,* under oath, *as to his knowledge of the commission of the offense charged * * *.'*"

There is not a smidgen of suggestion in this record to the effect that there was compliance with this interdiction.

The main opinion cites this statute which I think inapropos in this particular case. It does not point out in the record where it was followed in any way. It talks about some other statutes about *filing* complaints, and differences between felony complaints and misdemeanor complaints.

This case should be remanded to take evidence as to whether this statute was followed, and in such case it may be developed that shockingly it wasn't.

There is nothing vital in this case about rubber signatures or who should file a complaint. The vital issue is: Did the magistrate .examine the complainant as to his knowledge of the commission of the crime. Until this is shown, a dismissal is quite proper. (Emphasis mine.)

CALLISTER, J., concurs in the dissenting opinion of HENRIOD, J.