986 F.2d 1432
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Richard Lynn WRIGHT, Petitioner-Appellant,
v.
Gary W. DELAND, Respondent-Appellee.
 No. 92-4077.
 United States Court of Appeals, Tenth Circuit.
 Jan. 27, 1993.
 
 Before LOGAN, JOHN P. MOORE and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Wright was convicted of aggravated robbery in state court and subsequently filed a petition for habeas corpus in federal court. The district court in a twenty-two-page opinion denied relief. Mr. Wright appeals and we affirm.
 
 
 3
 We attach hereto a copy of the district court's thorough and well written Opinion and Order dated October 31, 1991.
 
 
 4
 Mr. Wright appeals this order asserting: (1) "the district court failed to properly consider the facts surrounding the 1976 charges brought against Petitioner in evaluating Petitioner's claim of speedy trial violations"; and (2) the informations filed in 1985 constituted preindictment delay which prejudiced petitioner and gave a tactical advantage to the prosecution. Mr. Wright, now acting pro se, filed an amended brief asserting: (1) his Sixth Amendment right to a speedy trial was violated; (2) the delay deprived him of a fair trial and due process; and (3) the confession produced at trial was involuntary.
 
 
 5
 The facts of this case are unusual and complex and will not be set forth. We summarize by stating Mr. Wright committed two felonies in Utah in 1976 and a complaint was issued for his arrest. A different Mr. Wright was arrested shortly thereafter and the complaint was amended to reflect the name of the Mr. Wright who was arrested. The prosecution subsequently learned they had the wrong Mr. Wright and the charges were dismissed. Obviously, no right to a speedy trial attached because once the Utah authorities amended the complaint, there were no charges pending against the petitioner.
 
 
 6
 In the meantime, Mr. Wright was arrested in Canada for an unrelated crime and was sentenced to twenty-five years in a Canadian prison. Five years later, in 1982, Mr. Wright was transfered to a Utah prison pursuant to a prisoner exchange program.
 
 
 7
 In 1985, new charges were filed by Utah against Mr. Wright for his 1976 actions. The 1976 complaint charged Mr. Wright with two counts of kidnapping. The 1985 counts charged two counts of aggravated robbery and kidnapping. In 1985, some five months after filing of the new charges, the jury convicted Mr. Wright of the robbery charges and acquitted him of kidnapping. The Utah sentences of five years to life are concurrent and concurrent to the Canadian sentence.
 
 
 8
 It serves no purpose for this court to restate that which the district court has stated so well. We have considered the arguments advanced by and on behalf of Mr. Wright and can find no error in the district court's disposition. The judgment of the district court is AFFIRMED for substantially the same reasons set forth by the district court.
 
 
 9
 Mr. Wright has asked that we certify certain questions to the Utah Supreme Court. Our decision in this case renders such action unnecessary and the motion is denied.
 
 ATTACHMENT
 
 10
 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION
 
 
 11
 RICHARD LYNN WRIGHT, Petitioner,
 
 
 12
 v.
 
 
 13
 GARY W. DELAND, Director, Department of Corrections, State
 
 
 14
 of Utah, Respondent.
 
 
 15
 Case No. 90-C-829.
 
 OPINION AND ORDER
 I. Introduction
 
 16
 Petitioner Richard Lynn Wright ("Wright") was convicted of aggravated robbery in a Utah state court. Subsequently, he filed a petition for a writ of habeas corpus with this court pursuant to 28 U.S.C. § 2254. Wright's petition raised four constitutional claims. First, Wright contended that his Sixth Amendment right to a speedy trial was violated. Second, Wright claimed that his due process rights under the Fourteenth Amendment were violated due to pre-indictment delay. Third, Wright alleged that the voluntariness of his confession was not established in accordance with the Due Process Clause of the Fourteenth Amendment. Fourth, Wright argued that he was not afforded effective appellate counsel in violation of the Sixth Amendment.
 
 
 17
 The court referred the matter to the magistrate pursuant to 28 U.S.C. § 636(b)(1)(B). After considering Wright's claims, the magistrate recommended that Wright's petition for a writ of habeas corpus be denied. Subsequently, Wright filed objections to the magistrate's Report and Recommendation and this court heard oral argument on these objections. After reviewing the file and memoranda submitted in this matter and carefully considering the arguments of counsel, the court issued the following opinion.
 
 II. Facts
 
 18
 On September 8, 1976, two Weber County deputies stopped to investigate an orange Corvette parked off the road near a riverbank outside of Ogden, Utah. The officers discovered a man asleep in the Corvette. During the course of investigation, the man pulled a gun on the officers, took their service revolvers, hand-cuffed them and ordered them to walk away. When the man turned to get the shotgun from the police car, the officers escaped, running along the riverbank until they came to a train trestle. The officers then stopped a passing train and climbed on board. During the escape, one of the officers, Deputy Bruce Hartman ("Hartman"), fell and hit his head. After boarding the train, Hartman passed out due to a severe concussion he sustained when he fell. Hartman subsequently was taken to a hospital where he was treated and released the following day.
 
 
 19
 Later on September 8, 1976, a complaint was filed against Wright, charging him with two counts of aggravated kidnapping. Several days later at a photo line-up, Hartman identified Leonard Eugene Wright as the perpetrator of the September 8, 1976 crimes. Five days later, Hartman was taken to a police station in Salt Lake City in which Leonard Eugene Wright was being held. Hartman again identified Leonard Eugene Wright as the individual responsible for the crimes of September 8, 1976. On that same day at another photo line-up, the other police officer present at the crime scene, Deputy Schlosser, tentatively identified Leonard Eugene Wright as the perpetrator. Schlosser, however, did not ever identify Leonard Eugene Wright in person.
 
 
 20
 At the initial appearance before the magistrate on September 13, 1976, the individual identified by Hartman asserted that his name was not Richard Lynn Wright but Leonard Eugene Wright. The magistrate, therefore, ordered the complaint amended to reflect the defendant's true name. Accordingly, the name Richard Lynn Wright typed on the complaint was crossed out and the name of Leonard Eugene Wright was typed in.
 
 
 21
 The preliminary hearing was held on September 24, 1976. Convinced that Leonard Eugene Wright was not the actual perpetrator, the county attorney moved for dismissal of the charges against Leonard Eugene Wright. This motion was granted, Leonard Eugene Wright was released and the prosecution against him was dropped.
 
 
 22
 Shortly after midnight on September 28, 1976, petitioner Richard Lynn Wright was arrested in Kamloops, British Columbia for possession of a restricted weapon. At the time of the arrest, Wright was driving an orange Corvette and had two revolvers in his possession. Later at trial, Hartman and Schlosser identified these revolvers as the weapons taken from them on September 8, 1976.
 
 
 23
 According to the account of the arrest given by Corporal Brian Beason ("Beason") of the Royal Canadian Mounted Police at the trial, Wright resisted arrest and a struggle ensued. Consequently, Beason choked Wright unconscious in order to subdue him. Wright subsequently was taken to a hospital and when he regained consciousness, he was taken to the police station. Upon arrival at the station at about 4:00 a.m., Wright resisted having his fingerprints taken. He taunted four officers standing in the station, saying there was nobody there big enough to take his prints. During the ensuing struggle, a shot was fired. Wright's fingerprints eventually were taken forcibly. When Wright was asked to sign the fingerprint card, however, he signed the name "John F. Kennedy." Angered at Wright's refusal to cooperate, Beason apparently then kneed Wright in the stomach and put him in a holding cell. Wright alleges that Beason threw him into the cell without any clothes on.
 
 
 24
 At about 9:00 a.m. that same day, Wright was taken from the holding cell to an interrogation room. Wright refused to talk to Beason, however, and was taken back to the cellblock area. At 4:50 p.m., Wright was again taken to the interrogation room. At trial, Beason testified that he informed Wright that he had the right to remain silent and that anything he said would be offered as evidence against him. Although Beason testified that Wright indicated he understood the warning, Wright denies that he was ever apprised of his rights.
 
 
 25
 During Beason's interrogation of Wright, Beason wrote down the questions Wright was asked and Wright's answers. Wright signed this longhand statement. Subsequently, the longhand statement was typed. Wright did not sign the typewritten statement. At trial, however, Beason read a statement allegedly made by Wright from a copy of the typewritten version. In this statement allegedly made by Wright in response to a question asked by Beason, Wright admitted that he had taken guns from two police officers in Ogden, Utah.
 
 
 26
 In January of 1977, Wright was convicted of crimes committed in Canada and was sentenced to a 25-year prison term. Wright commenced his sentence in a Canadian penitentiary. On October 13, 1978, Wright was transferred to a federal prison in Marion, Illinois pursuant to a Canadian-American prisoner exchange program. In June of 1982, Wright was transferred at his own request to the Utah State Prison pursuant to a federal-state prisoner exchange program.
 
 
 27
 On August 31, 1983, a federal probation officer from the Probation Office in the Northern District of California wrote to the Weber County District Attorney, inquiring whether Weber County intended to prosecute Wright for the 1976 crimes in Weber County. There is no evidence that the Weber County Attorney's Office ever responded to the letter.
 
 
 28
 New informations were filed against Wright on January 10, 1985, and amended on January 28, 1985. The new informations contained counts of aggravated robbery as well as kidnapping. Trial was held on June 14th and 17th, 1985, almost nine years after the crimes allegedly were committed. The jury found Wright guilty of two counts of aggravated robbery and not guilty of kidnapping. On June 18, 1985, Wright was sentenced to two concurrent prison terms of five years to life. Although the judge did not order the sentences to run concurrently with Wright's existing sentence, the Utah Board of Pardons appears to be treating the Utah sentence as concurrent with the Canadian sentence.
 
 
 29
 On June 9, 1987, the Utah Supreme Court affirmed Wright's conviction on direct appeal.[1] The Court held that Wright's right to a speedy trial under the Sixth Amendment had not attached, that prosecution of Wright was not barred by the statute of limitations, that the letter from the federal probation officer to the Weber County Attorney did not constitute request for disposition of charges under Utah Code Ann § 77-29-1 (1953), that the statutory right to demand trial had not been triggered since no untried indictment or information was pending against Wright and that the trial court's determination that Wright's confession was voluntary was not an abuse of discretion. Although Wright had not raised a due process claim, the court considered it anyway and found no evidence in the record to support such a claim.
 
 
 30
 Wright had been represented at the trial and on direct appeal by Bernard Allen. After the Utah Supreme Court affirmed his conviction, Wright was appointed new counsel, Kevin Sullivan, to help him file a petition for rehearing. Sullivan filed a petition for rehearing asserting that the Court had misapprehended the facts of the case due to the ineffectiveness of Wright's counsel on appeal. Wright then filed a pro se supplemental brief claiming that both of his attorneys were ineffective. On November 30, 1987, the Utah Supreme Court summarily denied Wright's motion for a rehearing.
 
 
 31
 On July 26, 1989, Wright petitioned the Utah Supreme Court for a writ of habeas corpus. The Supreme Court referred the petition to the Third District Court which granted the State's motion for summary judgment after a non-evidentiary hearing held January 10, 1990. On January 29, 1990, Judge Pat B. Brian entered his findings of fact and conclusions of law. Judge Brian held that Wright had failed to establish a violation of his Sixth Amendment right to speedy trial, that Wright had failed to establish a violation of the Fifth Amendment due to pre-indictment delay and that Wright's confession was voluntarily given. Judge Brian also concluded that Wright had not established ineffective assistance of counsel at either the trial court or appellate court level and that even if counsel had been ineffective, Wright had not established actual prejudice as a result.
 
 
 32
 On September 19, 1990, the Utah Court of Appeals affirmed the district court's dismissal of Wright's petition for post-conviction relief. Wright did not petition the Utah Supreme Court for certiorari. It is undisputed that the time has passed for filing the petition for certiorari and the parties agree that this procedure is no longer available. Wright, therefore, filed this petition for a writ of habeas corpus in the United States District Court District of Utah on October 12, 1990.
 
 III. Discussion
 A. Speedy Trial Claim
 I.
 
 33
 The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."[2] The right to a speedy trial attaches at the time of arrest, indictment, the filing of an information or the filing of other formal charges, which ever is earlier.[3] In the instant case, the parties dispute when Wright's right to a speedy trial attached. Wright contends this right attached in 1976 when the original charges were filed against him because the original complaint was never dismissed. As support for this contention, Wright notes that there is no record of an order of dismissal entered in the minutes setting forth the reasons for dismissal as required by former UTAH CODE ANN. § 77-51-4, now UTAH R.CRIM.P. 25(c). Additionally, Wright claims that the city court judge, acting as a magistrate, had no power to dismiss the complaint. Wright contends, therefore, that the complaint filed against him in 1976 has been pending since that time.
 
 
 34
 Conversely, the State contends that the original complaint filed against Wright was effectively dismissed on September 13, 1976 when, pursuant to the magistrate's order, the name Richard Lynn Wright was crossed out and the name of Leonard Eugene Wright typed in. Accordingly, the State contends that Richard Lynn Wright's right to a speedy trial attached in 1985 when new charges were filed against him.
 
 
 35
 Although the question of whether one is "accused" for purposes of the Sixth Amendment is one of federal law, the issue of whether charges were pending against Wright since 1976 is ultimately a question of state law. The views of a state's highest court with respect to state law are binding on the federal courts.[4] If, however, the issue is characterized as one of historical fact rather than a matter of state law, the federal court can overturn a factual conclusion of a state court if the conclusion is not fairly supported by the record. Under either analysis, Wright's speedy trial claim must be denied.
 
 
 36
 The Utah Supreme Court rejected Wright's speedy trial claim on the grounds that the speedy trial guarantee had not attached until the filing of the information in 1985.[5] In so holding, the court apparently concluded that the original complaint, naming Richard Lynn Wright, had been effectively dismissed under Utah state law and that no charges against Wright were pending until 1985. This conclusion is binding on the federal courts.
 
 
 37
 Additionally, the magistrate found support in the record for the Utah Supreme Court's apparent determination that the 1976 complaint was validly dismissed as to both Richard Lynn Wright and Leonard Eugene Wright. This court agrees. The name on the original complaint had been obtained from a driver's license the perpetrator had shown the police officers at the scene of the crime. Based on this information, the caption of the complaint contained the name "Richard Lynn Wright" as the name of the defendant. At the first appearance before Justice E.F. Ziegler, the complaint was amended to reflect the correct name of the individual standing before the judge. Accordingly, "Richard Lynn" was crossed out and "Leonard Eugene" was typed just above the name "Richard Lynn." The minute entry of September 13, 1976, plainly states that the reason the complaint was amended was to reflect the true name of the defendant. Ordering the complaint amended to reflect the true name of the defendant is clearly within the authority of the magistrate.[6] Once the complaint was amended to reflect the name of "Leonard Eugene Wright," the prosecution against "Richard Lynn Wright" effectively terminated and Richard Lynn Wright no longer stood accused.
 
 
 38
 Furthermore, this court agrees with the magistrate's finding that the original magistrate properly exercised his authority to dismiss the complaint and discharge Leonard Eugene Wright. At the preliminary examination, the magistrate has the power to either dismiss the charges and discharge the defendant or bind the defendant over to the district court if there appears to be probable cause to believe that the defendant committed the crime.[7] At the preliminary examination, the prosecution requested that the complaint be dismissed and the defendant discharged because there was no probable cause to believe that Leonard Eugene Wright had committed the crimes charged. In granting this request, the magistrate was acting within his authority.
 
 
 39
 Wright cites Van Dam v. Morris[8] as authority for his position. Van Dam, however, is not applicable to the instant case. In Van Dam, the magistrate dismissed a misdemeanor complaint for the second time on the grounds that the first dismissal constituted a bar to further prosecution. The Utah Supreme Court held that although the magistrate had statutory authority to discharge the defendant or hold him or her for proceedings in the district court, he did not have the authority to dismiss the action the second time because only the court could dismiss an action based on the statutory bar. The Utah Supreme Court did not say the magistrate lacked authority to dismiss the complaint in the first place if he did not have sufficient cause to believe the defendant committed the crime.
 
 
 40
 Similarly, Salt Lake City v. Hanson,[9] cited by Wright, is not applicable to the circumstances of the instant case. In Hanson, the district court had improperly dismissed a number of misdemeanor cases on appeal from the city court. The Utah Supreme Court admonished the district court to follow former UTAH CODE ANN. § 77-51-44,[10] now UTAH R.CRIM.P. 25(C), which required the court to set forth its reasons for dismissing a criminal action. This provision, however, applies to the district court, not to the magistrate at a preliminary hearing for a felony charge. Consequently, Hanson has no application in this action.
 
 II.
 
 41
 The magistrate found that the issue of whether the charges against Wright were properly dismissed was not germane to his claim of a violation of his right to a speedy trial because Wright did not know that charges against him were pending during the eight years he was incarcerated before 1985. This court agrees. The right to a speedy trial protects the interest of an accused in being free from anxiety and concern about the pending trial. As noted by the United States Supreme Court, the right to a speedy trial protects the individual's right to go about his or her business and family life unfettered by physical restraints and to be free from the stigma of public accusation.[11] When an individual is not aware that he or she has been accused, he or she cannot be suffering anxiety and concern stemming from the accusation.
 
 
 42
 The right to a speedy trial does apply to accused persons already incarcerated for a different crime.[12] Delay in prosecuting charges against a prisoner can cause the prisoner as much anxiety and depression as a person who is at large, thereby reducing the prisoner's motivation for rehabilitation.[13] Additionally, the existence of untried charges affects the conditions and duration of the accused's imprisonment on the unrelated charges.[14] As noted above, however, a prisoner who is unaware of any detainers or untried charges against him cannot be suffering depression and anxiety as a result of the untried charges.[15] Moreover, the State cannot withhold privileges, programs, or parole to a prisoner on the basis of untried charges if prison officials and the Board of Pardons are unaware of the charges. Furthermore, during the hearing before the magistrate, Wright testified that he first learned of the charges against him in 1985. No evidence was presented that a detainer had ever been filed against Wright that Wright had been specifically informed of any pending complaint or information against him prior to 1985. Additionally, section 77-29-2 of the Utah Code provides that the warden of the prison shall promptly inform a prisoner in writing of any untried indictments or informations of which the warden has knowledge and of the prisoner's right to request final disposition of the charges.[16] At the hearing on Wright's motion to dismiss the criminal charges in the state trial court, the State presented evidence that Wright had participated in an orientation program when he arrived at the Utah State Prison, and that part of the standard orientation program included a general lecture on prisoners' rights regarding detainers. From the record herein, it is clear that if Wright had inquired as to whether there were any untried informations filed against him, he would not have been told of any charges filed against him by the Weber County attorney. The magistrate concluded, therefore, and this court agrees, that in the instant case, where neither the prisoner nor the State was aware of any untried informations or complaints against Wright, the petitioner's interest in the right to a speedy trial was not implicated.
 
 B. Due Process Claim
 
 43
 Having determined that Wright's speedy trial claim is without merit, the court now turns to his due process claim. Although the Sixth Amendment right to a speedy trial does not attach until a person is formally arrested or charged with a crime, a substantial delay in bringing charges may yet deprive a federal defendant of his right to a fair trial and due process under the Fifth Amendment.[17] The applicable statute of limitations is the primary mechanism for protecting individuals against the prejudice resulting from the bringing of stale criminal charges.[18] The United States Supreme Court has stated, however, that "the 'statute of limitations does not fully define [a defendant's] rights with respect to the events occurring prior to indictment,' "[19] adding that "the Due Process Clause has a limited role to play in protecting against oppressive delay."[20]
 
 
 44
 The United States Court of Appeals for the Tenth Circuit has adopted a stringent two-pronged test to evaluate due process claims based on alleged pre-indictment delay. First, the defendant must prove that he or she suffered actual and substantial prejudice to his or her defense. Second, the defendant must also prove that the Government purposefully designed the delay to gain a tactical advantage or to harass the defendant.[21] Prevailing on a due process claim under this test is difficult. Even assuming that a defendant can overcome the first prong by showing actual and substantial prejudice, no due process violation has occurred unless the defendant can prove that the prosecution intentionally designed the delay to gain a tactical advantage over the defendant or to harass the defendant.[22] Indeed, the magistrate found no cases in the Tenth Circuit in which a defendant prevailed on a claim of unconstitutional pre-accusation delay. Similarly, successful due process claims based on pre-accusation delay are rare cases in the other Circuits.
 
 
 45
 In the instant case, the magistrate found that Wright was prejudiced by the State's delay in filing charges because he was unable to present an alibi defense; the witnesses who could have provided an alibi were dead or incompetent due to Alzheimer's disease. This court agrees. The unavailability of witnesses who would have provided a definite alibi is prejudicial to a defendant's right to a fair trial.[23] Additionally, the court agrees with the magistrate that the loss of the photos of Leonard Eugene Wright and Leonard Eugene Wright's unavailability for trial also prejudiced the defendant's right to a fair trial.
 
 
 46
 However, although Wright has established that the State's delay in prosecuting him, there is no evidence that the State deliberately delayed prosecution in order to gain a tactical advantage over the Wright. At the hearing before the magistrate, William Daines, the Weber County attorney, testified that he did not know why Wright was not prosecuted sooner. Daines testified that in September of 1976, he learned from the Royal Canadian Mounted Police that Richard Wright was in custody in Canada, that he was found with two service revolvers and that he had admitted to taking the guns from two Weber County deputies. Daines further testified that in January of 1977, he learned that Wright had been sentenced to a prison term of twenty-five years in a Canadian penitentiary. Daines testified that when he learned of this sentence, he simply decided to let Wright serve his prison sentence in Canada instead of attempting to extradite Wright from Canada. The magistrate determined that this evidence failed to establish that the long delay in prosecuting Wright was a deliberate tactic to gain an advantage over Wright or harass Wright. This court agrees.
 
 
 47
 Applying the two-pronged test discussed above to the instant case, Wright's due process claim must fail. Although Wright established that he was actually prejudiced by the State's delay in prosecuting him, he was unable to demonstrate that this delay was deliberately designed for an improper purpose. Accordingly, the court holds that petitioner's due process rights have not be violated.
 
 C. Voluntariness of the Confession
 
 48
 The use of an involuntary confession at trial violates a defendant's right to due process under the Fourteenth Amendment as well as the Fifth Amendment privilege against self-incrimination.[24] In determining whether a confession was given voluntarily, the court must consider the totality of the circumstances.[25] After examining the totality of the circumstances surrounding Wright's confession, the magistrate found that the confession was voluntarily given. This court agrees and, therefore, adopts the magistrates report and recommendation with regards to the voluntariness of Wright's confession.
 
 D. Ineffective Assistance of Counsel
 
 49
 In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that but for the counsel's inadequacies, the result of the proceedings would have been different.[26] Applying this test to the facts of the instant case, the magistrate concluded that Wright's counsel provided effective assistance both at trial and on appeal and that failure to consider this claim would not prejudice Wright or result in a fundamental miscarriage of justice. This court agrees and, therefore, adopts the magistrates report and recommendation regarding Wright's ineffective assistance of counsel claim.
 
 IV. Conclusion
 
 50
 Except as modified herein, the court hereby adopts the magistrate's proposed findings. For the reasons set forth above, the court DENIES plaintiff's petition for a writ of habeas corpus and dismisses the same.
 
 
 51
 IT IS SO ORDERED.
 
 
 52
 DATED this 31 day of October, 1991.
 
 
 53
 /s/Bruce S. Jenkins
 
 
 54
 /s/Chief Judge, United States
 
 
 55
 /s/District Court
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 See State v. Wright, 745 P.2d 447 (Utah 1987)
 2 U.S. CONST. amend. VI. The Utah Constitution also confers the right to a speedy trial. See UTAH CONST. art. I, § 12 ("In criminal prosecutions the accused shall have the right ... to have a speedy public trial by an impartial jury...."). Additionally, the Utah Code guarantees the right to a speedy trial. See UTAH CODE ANN. § 77-1-6(1)(f) (1990) ("In criminal prosecutions the defendant is entitled ... [t]o a speedy public trial by an impartial jury....").
 
 
 [3]
 Dillingham v. United States, 423 U.S. 64, 65 (1975)
 
 
 [4]
 Wainwright v. Goode, 464 U.S. 78, 84, reh'g denied, 465 U.S. 1014 (1983)
 
 
 [5]
 State v. Wright, 745 P.2d 447, 449 (Utah 1987)
 
 
 [6]
 See UTAH R.CRIM.P. 4(c), (d) & (f)
 
 
 [7]
 UTAH R.CRIM.P. 7(8)(b) & (c)
 
 
 [8]
 571 P.2d 1325 (Utah 1977)
 
 
 [9]
 19 Utah 2d 32, 425 P.2d 773 (Utah 1967)
 
 
 [10]
 This provision provided that "[t]he court may, either of its own motion or upon the application of the county attorney, in furtherance of justice order an action, information or indictment to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes." UTAH CODE ANN. § 77-51-4 (1978) (emphasis added)
 
 
 [11]
 See United States v. Marion, 404 U.S. 307, 320-21 (1971). See also Barker v. Wingo, 407 U.S. 514, 532 (1972) (identifying minimization of accused's anxiety and concern as one of the main functions of the right to a speedy trial)
 
 
 [12]
 Dickey v. Florida, 398 U.S. 30 (1971)
 
 
 [13]
 Smith v. Hooey, 393 U.S. 374, 379 (1968)
 
 
 [14]
 Id. at 378
 
 
 [15]
 See United States v. Ramirez, 524 F.2d 283, 286 (10th Cir.1975) (no prejudice to defendant resulting in speedy trial violation where defendant was unaware of charges against him until six weeks before trial)
 
 
 [16]
 This provision states that "[t]he warden, sheriff or custodial officer shall promptly inform a prisoner in writing of the source and contents of any untried indictments or informations against that prisoner concerning which he has knowledge and of that prisoner's right to make a request for a final disposition thereof." UTAH CODE ANN. § 77-29-2 (1990)
 
 
 [17]
 Marion, 404 U.S. at 322
 
 
 [18]
 Id. at 322
 
 
 [19]
 United States v. Lovasco, 431 U.S. 783, 789 (1976), reh'g denied, 434 U.S. 881 (1977) (quoting Marion, 404 U.S. at 324)
 
 
 [20]
 Id
 
 
 [21]
 See United States v. Vap, 852 F.2d 1249, 1252 (10th Cir.1988); Perez v. Sullivan, 793 F.2d 249, 259 (10th Cir.), cert. denied, 479 U.S. 936 (1986)
 
 
 [22]
 See, e.g., United States v. Hoo, 825 F.2d 667 (2d Cir.1987) (delay in filing indictment until two weeks after defendant's twenty-first birthday deprived defendant of protections of Juvenile Delinquency Act, but was not unconstitutional absent proof that delay was an intentional device to gain a tactical advantage), cert. denied, 484 U.S. 1035 (1988); United States v. Benson, 846 F.2d 1338 (11th Cir.1988) (At least half of an eight-year delay was admittedly caused by pure negligence, however the delay was not unconstitutional absent a showing the government deliberately delayed to gain a tactical advantage); Stoner v. Graddick, 751 F.2d 1535 (11th Cir.1985) (Although the Government offered no reason or justification for 19-year delay between crime and indictment, defendant's due process rights were not violated because defendant failed to show intentional delay to gain a tactical advantage)
 
 
 [23]
 Howell v. Baker, 904 F.2d 889 (4th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 590 (1990)
 
 
 [24]
 Colorado v. Connelly, 479 U.S. 157, 163 (1986)
 
 
 [25]
 Fikes v. Alabama, 352 U.S. 191 (1956), reh'g denied, 352 U.S. 1019 (1957)
 
 
 [26]
 Tapia v. Tansy, 926 F.2d 1554, 1564 (10th Cir.1991), petition for cert. filed, No. 90-8152, 1991 WL 96388 (U.S. Oct. 7, 1991)