David RENN, Plaintiff and Respondent,

v.

UTAH STATE BOARD OF PARDONS, Defendant and Petitioner.

No. 930578.

Supreme Court of Utah.

Oct. 12, 1995.

---

Anthony B. Quinn, Mary Anne Q. Wood, Larry S. Jenkins, Salt Lake City, for plaintiff.

Jan Graham, Atty. Gen., James H. Beadles, Asst. Atty. Gen., Salt Lake City, for defendant.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

STEWART, Associate Chief Justice:

This case is here on a writ of certiorari to review the decision of the Utah Court of

Appeals in *Renn v. Utah State Board of Pardons,* 862 P.2d 1378 (Utah Ct.App.1993). The petitioner, the Utah State Board of Pardons (the "Board"), argues that the Court of Appeals erred in ruling that David Renn's petition for a writ of habeas corpus was not barred by the ninety-day statute of limitations for filing petitions for writs of habeas corpus in Utah Code Ann. § 78–12–31.1. The Court of Appeals had earlier held § 78–12–31.1 unconstitutional in *Currier v. Holden,* 862 P.2d 1357 (Utah Ct.App.1993), *cert. denied sub nom. McClellan v. Holden,* 870 P.2d 957 (Utah 1994). The Court of Appeals reversed the district court's dismissal of Renn's petition for a writ of habeas corpus on the ground that the writ was barred by the statute of limitations and remanded for a hearing on the merits.

## I.  FACTS

In 1990, Renn was convicted of manslaughter, a second degree felony, and sentenced to serve an indefinite term of one to fifteen years in the Utah State Prison. On April 24, 1991, he appeared before the Board for an original parole grant hearing. After questioning Renn and hearing testimony from a representative of the victim's family, the Board stated that it needed more information about Renn before it could grant Renn a parole date. The Board ordered a psychological evaluation of Renn and issued an interim decision setting a parole rehearing for July 1995. The Board issued a final decision on April 30, 1991, that postponed Renn's parole rehearing until July 1998.

On February 13, 1992, Renn filed a petition for post-conviction relief in the district court under Rule 65B(c) of the Utah Rules of Civil Procedure. He alleged that the Board acted arbitrarily and with "no consistency and no logical reason" (1) in selecting a parole rehearing date that exceeded the parole date called for by the Board's guidelines for manslaughter; (2) in increasing the time to his parole rehearing date by three years; and (3) in failing to explain its reasons for modifying its interim decision. The trial court dismissed Renn's petition, ruling that it was barred by the three-month statute of limitations for the filing of petitions for writs of habeas corpus. Utah Code Ann. § 78–12–31.1.[1] On the basis of its prior ruling in *Currier v. Holden,* 862 P.2d 1357 (Utah Ct. App.1993), which held § 78–12–31.1 unconstitutional under article I, section 11 of the Utah Constitution, the Court of Appeals reversed the trial court's ruling and remanded for decision of the issues raised in Renn's petition.

In this Court, the Board argues that the Court of Appeals erred in applying the law established in *Currier* to the facts of this case and that the panel of the Court of Appeals should have addressed the constitutionality of the statute of limitations anew. The Board argues that *Currier* was not binding on the panel of the Court of Appeals that decided this case on the theory that decisions of the Court of Appeals holding a statute unconstitutional are not binding on other panels of the Court of Appeals. In essence, the Board's position is that only this Court has the authority to issue rulings that hold a statute unconstitutional and bind the Court of Appeals and all lower courts, and that a decision of a panel of the Court of Appeals with respect to the constitutionality of a statute is similar to a decision of a district court, which is not binding precedent on other district courts.

## II.  ARTICLE VIII JUDICIAL POWER AND THE COURT OF APPEALS

The Constitution of the State of Utah declares, "The judicial power of the state shall be vested in a supreme court, in a trial court of general jurisdiction known as the district court, and in such other courts as the Legislature by statute may establish." Utah Const. art. VIII, § 1. It has long been held that the judicial power includes the authority to decide whether a statute is constitutional. *Block v. Schwartz,* 27 Utah 387, 392, 76 P. 22, 23 (1904); *see State ex rel. University of*

---

1.  Utah Code Ann. § 78–12–31.1 provides:

Within three months:

For relief pursuant to a writ of habeas corpus. This limitation shall apply not only as to grounds known to petitioner but also to grounds which in the exercise of reasonable diligence should have been known by petitioner or counsel for petitioner.

*Utah v. Candland,* 36 Utah 406, 419, 104 P. 285, 290 (1909); *State ex rel. Richards v. Armstrong,* 17 Utah 166, 174, 53 P. 981, 983 (1898). The Legislature implicitly recognized the scope of the term "judicial power" in enacting Utah Code Ann. § 78–2–2(3)(g), which grants the Supreme Court appellate jurisdiction over "a final judgment or decree of any court of record holding a statute ... unconstitutional."

■ The Court of Appeals was established by statute in 1986. 1986 Utah Laws ch. 47, §§ 44–48; *see* Utah Code Ann. § 78–2a–1 (1992). Under article VIII, section 1, the Court of Appeals is vested with judicial power to decide cases that fall within that court's jurisdiction. Because the Court of Appeals exercises article VIII judicial power, that court has the power to rule on the constitutionality of statutes.

■ The Court of Appeals has statewide jurisdiction, and its rulings, except to the extent they may conflict with rulings of this Court, are binding state-wide, whether those rulings are constitutionally based or not. Under current statutes, the Court of Appeals can act only in panels. Utah Code Ann. § 78–2a–2(2). Because that court adjudicates cases in three-judge panels, it follows that the rulings of a panel of the court also apply state-wide. The panel that held § 78–12–31.1 unconstitutional in *Currier v. Holden,* 862 P.2d 1357 (Utah Ct.App.1993), did so pursuant to the "judicial power of the state" which the Legislature had conferred on the Court of Appeals pursuant to the power the Legislature has under Article VIII, section 1.

■ The Board does not contend that the panel which decided *Currier* had no authority whatsoever to declare a statute unconstitutional, but rather that the decision of that panel is not binding on other panels of that court or on district courts. To adopt that view would be to disregard the nature of the Court of Appeals' jurisdiction, the manner in which it must act, and the necessity for uniformity and predictability in the law established by the panels of the Court of Appeals.

Indeed, we have held that a decision of a panel of the Court of Appeals is entitled to the force of stare decisis in subsequent cases decided by other panels of the court. *State v. Thurman,* 846 P.2d 1256, 1269 (Utah 1993); *State v. Menzies,* 889 P.2d 393, 398–99 (Utah 1994). Thus, a rule of law pronounced by a panel governs all later cases involving the same legal issues decided by other panels of that court and all courts of lower rank. *Thurman,* 846 P.2d at 1269. In sum, the holding of the Court of Appeals in *Currier v. Holden,* 862 P.2d 1357, that the three-month statute of limitations for habeas corpus petitions is unconstitutional had the binding effect of stare decisis on other panels of the Court of Appeals, including the panel that decided the instant case and all lower courts.

■ In addition, the Board argues that the facts alleged in Renn's petition make the instant case distinguishable from the facts decided in *Currier.* Renn's petition in the district court was for post-conviction relief in the nature of a writ of habeas corpus, pursuant to Rule 65B(b) of the Utah Rules of Civil Procedure. We are not bound, however, by Renn's characterization of his petition for an extraordinary writ, or even the characterization of the Court of Appeals. We will look to the substance of the action and the nature of the relief sought in determining the true nature of the extraordinary relief requested. In short, the name a party or a court applies to an action for an extraordinary writ is not binding if the true nature of the petition is other than the name applied to it.

■ In its early history, a writ of habeas corpus was classically used to challenge the lawfulness of a physical restraint under which a person was held or the jurisdiction and sentence of a court that convicted a person. *See Hurst v. Cook,* 777 P.2d 1029, 1034 (Utah 1989); *Ziegler v. Miliken,* 583 P.2d 1175, 1176 (Utah 1978). Later, the scope of the writ was expanded to provide a post-conviction remedy in unusual circumstances to determine whether a person was convicted in violation of principles of fundamental fairness [2] or whether the sentence

---

2. Not infrequently, the fairness of a conviction turns on facts that are not, and could not be, in the record and therefore could not be raised on direct appeal. In those cases, a writ of habeas

imposed is void. *Thompson v. Harris,* 106 Utah 32, 144 P.2d 761 (1943), *cert. denied,* 324 U.S. 845, 65 S.Ct. 676, 89 L.Ed. 1406 (1945); *Hurst,* 777 P.2d at 1034. In addition, a writ of habeas corpus may be used to challenge cruel or oppressive conditions of imprisonment. *Wickham v. Fisher,* 629 P.2d 896 (Utah 1981).

■ Here, Renn does not challenge the legality of his detention, the lawfulness of the court-imposed sentence, or the conditions of his confinement. Rather, Renn seeks review of the Board's decision to postpone the hearing at which his parole release date is set. He alleges that the Board acted with "no consistency and no logical reason" and failed to explain its reasons for extending his rehearing date an additional three years. If he is entitled, the relief he seeks is akin to the kind of relief that is available by the extraordinary writs of certiorari or mandamus rather than by habeas corpus.

■ The common law writ of certiorari was used when there was no adequate remedy at law, such as a direct statutory appeal, to bring the record of the proceedings of an inferior tribunal before a superior court to determine from the record whether the inferior tribunal exceeded its jurisdiction or failed to proceed in accordance with law. *Boggess v. Morris,* 635 P.2d 39, 42 (Utah 1981) (citing *Gilbert v. Board of Police & Fire Comm'rs,* 11 Utah 378, 389, 40 P. 264, 266 (1895)); *see Salt Lake City v. Hanson,* 19 Utah 2d 32, 33 n. 1, 425 P.2d 773, 773 n. 1 (1967); 14 Am.Jur.2d *Certiorari* § 2 (1964). The scope of the common law writ has been broadened not only to encompass questions of jurisdiction and regularity of proceedings, but also to correct " 'errors in law affecting the substantial rights of the parties.' " *Boggess,* 635 P.2d at 42 (quoting *Gilbert,* 11 Utah at 389, 40 P. at 266).

■ The common law writ of mandamus was designed to compel a person to perform a legal duty incumbent on him by virtue of his office or as required by law. *State v. Ruggeri,* 19 Utah 2d 216, 218, 429 P.2d 969, 970 (1967); *see Cope v. Toronto,* 8 Utah 2d 255, 257, 332 P.2d 977, 978 (1958); 52 Am. Jur. *Mandamus* § 5 (1970). The writ was initially available to compel the performance of a nondiscretionary duty and to " 'compel action, when refused, in matters involving judgment and discretion, but not to direct the exercise of judgment or discretion in a particular way.' " *Ruggeri,* 19 Utah 2d at 218, 429 P.2d at 970 (quoting 34 Am.Jur. *Mandamus* § 4); *see also Rose v. Plymouth Town,* 110 Utah 358, 173 P.2d 285 (1946). In modern times, that writ has also been expanded so that it can be used to correct gross abuses of discretion. *Dorge v. Utah Court of Appeals,* 762 P.2d 347 (Utah 1988); *see, e.g., Olson v. Salt Lake City School Dist.,* 724 P.2d 960 (Utah 1986) (mandamus available to enforce limits of discretion).

■ With the promulgation of Rule 65B of the Utah Rules of Civil Procedure, the common law forms and procedures for extraordinary writs were abolished in keeping with modern concepts of pleading and practice,[3] but the remedies continue to be available. *Ruggeri,* 19 Utah 2d at 217, 429 P.2d at 969–70; *Hanson,* 19 Utah 2d at 33 n. 1, 425 P.2d at 773 n. 1. Indeed, the authority of all Utah courts to issue extraordinary writs is constitutional in nature and may be exercised when the circumstances of a particular case warrant extraordinary relief. Article VIII, section 3 provides that the "Supreme Court shall have original jurisdiction to issue all extraordinary writs." Similarly, article VIII, section 5 states, "The district court shall have ... power to issue all extraordinary writs." However, extraordinary writs are available only when there is no "plain, speedy and adequate remedy" at law. Utah R.Civ.P. 65B(a).

corpus is the only means for attacking a conviction. See cases collected in *Hurst v. Cook,* 777 P.2d 1029, 1036 n. 6 (Utah 1989).

**3.** Rule 65B(a) of the Utah Rules of Civil Procedure (1986) provided:

Special forms of pleadings and of writs in habeas corpus, mandamus, quo warranto, certiorari, prohibition and other extraordinary writs, as heretofore known, are hereby abolished. Where no other plain, speedy and adequate remedy exists, relief may be obtained by appropriate action under these rules....

■ In deciding whether a petition for an extraordinary writ should be granted, a court must look to the nature of the relief sought, the circumstances alleged in the petition, and the purpose of the type of writ sought in deciding whether to grant extraordinary relief. As a matter of practice, many petitions for an extraordinary writ brought under Rule 65B have been referred to by petitioners, and occasionally by courts, as petitions for writs of "habeas corpus" when in fact they were not but might more appropriately be considered petitions for writs of certiorari or mandamus. *See, e.g., Hall v. Utah Bd. of Pardons,* 806 P.2d 217, 218 (Utah Ct.App.1991) (habeas corpus action to review exercise of discretion by board of pardons); *Hatch v. DeLand,* 790 P.2d 49, 51 (Utah Ct.App.1990) (same). In particular, it has been a widespread practice to style petitions seeking review of the Board's actions as writs of habeas corpus. *See, e.g., Lancaster v. Utah Bd. of Pardons,* 869 P.2d 945, 947 (Utah 1994) (Rule 65B(c) petition challenging board of pardons' failure to fix exact number of years defendant would serve on indeterminate sentence); *Estes v. Van Der Veur,* 824 P.2d 1200, 1201 (Utah Ct.App.1992) (petition for writ of habeas corpus alleging that board of pardons violated due process protections).

■ Petitions for writs of habeas corpus under Rule 65B(c) cannot be used to challenge Board actions that might be challenged under Rule 65B(e). Rule 65B(e) states in part:

(e) **Wrongful use of judicial authority or failure to comply with duty.**

(1) **Who may petition.** A person aggrieved or whose interests are threatened by any of the acts enumerated in this paragraph (e) may petition the court for relief.

(2) **Grounds for relief.** Appropriate relief may be granted: (A) where an inferior court, administrative agency, or officer exercising judicial functions has exceeded its jurisdiction or abused its discretion; (B) where an inferior court, administrative agency, corporation or person has failed to perform an act required by law as a duty of office, trust or station; or (C) where an inferior court, administrative agency, corporation or person has refused the petitioner the use or enjoyment of a right or office to which the petitioner is entitled.

Utah R.Civ.P. 65B(e)(1)–(2). The relief available under Rule 65B(e) includes relief that was available at common law by writs of certiorari and mandamus. *See, e.g., Preece v. House,* 886 P.2d 508, 511 (Utah 1994) (petitioner appropriately sought extraordinary relief under Rule 65B(e)(2)(B) when alleging that board of pardons failed to comply with its own rule); *Labrum v. Utah State Bd. of Pardons,* 870 P.2d 902, 904 (Utah 1993) (petitioner sought review under 65B(e) alleging that due process required the board to provide timely notice and copies or summaries of contents of board's files).

■ Section 78–12–31.1, which *Currier* held unconstitutional, does not, on its face, apply to petitions for writs of certiorari and mandamus. Such petitions are not therefore subject to the statute of limitations that was intended to govern petitions for writs of habeas corpus.

■ With respect to mandamus and certiorari, a court has discretion in granting requested relief. As stated in *Boggess v. Morris,* " 'This Court, in common with all courts having the power to issue writs of certiorari, may exercise a reasonable discretion in granting or refusing a writ.' " 635 P.2d at 42 (quoting *Rohwer v. District Court,* 41 Utah 279, 293, 125 P. 671, 676 (1912)). In *State v. Ruggeri,* the Court stated, "[T]he granting of the writ [of mandamus] is always a matter of discretion with this court and never a matter of right on behalf of the applicant." 19 Utah 2d at 220, 429 P.2d at 971.

■ Because the Legislature has directed that there be no right of appeal from Board of Pardons actions, Utah Code Ann. § 77–27–5(3), mandamus and certiorari may not be used as a substitute for a statutory appeal. Nevertheless, where there is a gross and flagrant abuse of discretion and fundamental principles of fairness are flouted, a court may, giving appropriate deference to legislative policy and the extraordinarily difficult duties of the Board of Pardons, inter-

vene to correct such abuses by means of an appropriate extraordinary writ. *See* Utah R.Civ.P. 65B(e); *Labrum,* 870 P.2d at 910–11.

■ The Board argues that a limitation period for filing a petition for certiorari review would not be unconstitutional under the open courts analysis the Court of Appeals utilized in *Currier,* and urges us to establish a time limitation similar to that for a direct appeal. In essence, the Board asks us to perform what is a legislative act and establish a statute of limitations. Even if it would be constitutionally permissible to so limit extraordinary writs, we do not have the power to do that which is a legislative act. While petitions under 65B(e) for a writ of certiorari or mandamus should be filed within a reasonable time after the act complained of has been done or refused, there is no fixed limitation period governing the time for filing them. Nevertheless, the equitable doctrine of laches is available to dismiss untimely writs. *See generally Angelos v. First Interstate Bank,* 671 P.2d 772 (Utah 1983) (explaining doctrine of laches).

Our cases demonstrate the practical utility of the flexibility of extraordinary writs in various circumstances. For example, in *Boggess* this Court granted a petition for a common law writ of certiorari to review a criminal conviction after the time for filing a statutory appeal had elapsed because of defense counsel's constitutionally deficient conduct in not filing a notice of appeal. Accordingly, the petitioner had no adequate remedy at law for asserting his constitutional right of appellate review. The Court held that extraordinary relief was warranted to effectuate that right. And in *State v. Hallett,* 856 P.2d 1060, 1061 (Utah 1993), we affirmed the Court of Appeals' granting of a petition for a common law writ of certiorari to review the defendant's conviction because the defendant had been denied his right to appeal. The type of extraordinary relief available in *Boggess* and *Hallett* would be eliminated if we were to adopt, as the Board suggests, a limitation period analogous to direct appeals from criminal convictions.

## III. ALTERNATIVE DISPOSITION

■ The Board also argues that the Court of Appeals should have canvassed the record for an alternative basis upon which to affirm the district court under *Lancaster v. Utah Board of Pardons,* 869 P.2d 945, 947 (Utah 1994). In *Lancaster,* we affirmed the dismissal of a Rule 65B(c) petition, even though the trial court had failed to articulate its reasons for denying the petition as required by that rule, because on an independent review of the pleadings we concluded that the petition was properly dismissed. The determination was based on the nature of the claims brought by the petitioner. Because due process protections apply to original parole grant hearings, *Labrum,* 870 P.2d at 911, "the fairness of the *process* by which the Board undertakes its sentencing function" is reviewable by an extraordinary writ.[4] *Lancaster,* 869 P.2d at 947 (citing *Labrum,* 870 P.2d at 910); *see Preece,* 886 P.2d at 512; *Foote v. Utah Bd. of Pardons,* 808 P.2d 734, 735 (Utah 1991). However, because "we do not sit as a panel of review on the result, absent some other constitutional claim," the substance of the Board's decision is not reviewable by an extraordinary writ except perhaps in an extreme case. *Lancaster,* 869 P.2d at 947 (citing *Labrum,* 870 P.2d at 910); *Preece,* 886 P.2d at 512; *see* Utah Code Ann. § 77–27–5(3). None of the claims brought by the petitioner in *Lancaster* described a due process violation reviewable under *Foote* and *Labrum.* Accordingly, we held that the petition was properly dismissed as frivolous on its face. *Lancaster,* 869 P.2d at 947.

---

4. We note that this rule, articulated in *Labrum v. Utah State Board of Pardons,* 870 P.2d 902, 913–14 (Utah 1993), is limited to a prospective application: "[W]e hold that the due process safeguards identified today apply only in those original parole grant hearings occurring on or after the date of this decision." However, in *Labrum* we extended the benefit of our decision "to any inmate who currently has a claim pending in the district court or on appeal before this court or the court of appeals challenging original parole grant hearing procedures on due process grounds." *Id.* at 914. Renn's claims were pending on a petition for a writ of certiorari before this Court at the time we issued *Labrum* and, therefore, Renn is entitled to the benefit of its ruling.

The Board argues that Renn's petition is likewise frivolous and improper. The Board asserts that Renn challenges only its substantive decision to modify his rehearing date and thus fails to state a valid claim for relief. Therefore, the Board argues, the Court of Appeals erred by not affirming the district court on that alternative ground. We disagree.

The Court of Appeals reviewed the record and declined to affirm the dismissal of Renn's petition on an alternative ground. The court stated:

[D]espite the fact that we agree with the State's general premise that an appellate court may affirm a district court's dismissal of a habeas corpus petition on alternative grounds, we cannot apply that premise here. Our review of this record reveals no discussion relevant to the nature of Renn's challenges.... The district court ... dismissed the case solely on the basis of the statute of limitations, having had no occasion to determine whether these claims involved procedural due process or substantive discretionary issues. The record, therefore, provides us no reasonable alternative basis by which to uphold the district court's dismissal of Renn's petition.

862 P.2d at 1381–82.

Our own review of the record convinces us of the correctness of the Court of Appeals' decision. The record is insufficient to provide a basis upon which to determine the nature of Renn's claims. Renn's petition could fairly be interpreted as involving issues of procedural due process that may be subject to judicial review or substantive issues exclusively within the Board's discretion. To the extent Renn challenges the fairness of the procedure followed by the Board in setting his parole rehearing date, Renn states a claim reviewable under Rule 65B(e). *See Labrum,* 870 P.2d at 911; *Preece,* 886 P.2d at 511–12 (Rule 65B(e) petition alleging that board of pardons failed to comply with its own rules requiring "that an 'explanation of the reasons for [a] decision [be] given and supported in writing'" (quoting Utah Admin.Code R671–305–2 (1992)). Accordingly, we affirm the Court of Appeals' reversal and

remand to the district court for an evaluation of the issues raised in Renn's petition.

Affirmed.

HOWE, DURHAM and RUSSON, JJ., concur in Associate Chief Justice STEWART's opinion.

ZIMMERMAN, C.J., concurs in the result.