Daniel D. PADILLA, Plaintiff
and Appellant,

v.

UTAH BOARD OF PARDONS AND
PAROLE and State of Utah,
Defendants and Appellees.

No. 960355.

Supreme Court of Utah.

Oct. 10, 1997.

Edward K. Brass, Salt Lake City, for plaintiff.

Jan Graham, Atty. Gen., Nancy L. Kemp, Asst. Atty. Gen., Salt Lake City, for defendants.

RUSSON, Justice:

## INTRODUCTION

Daniel D. Padilla, an inmate at the Utah State Prison at Draper, Utah, appeals the district court's denial of his petition for extraordinary relief. In his petition, Padilla sought relief from the actions of the Utah Board of Pardons and Parole (the "Board") in relation to an original parole grant hearing. We affirm.

## BACKGROUND

In 1987, Padilla was convicted of second degree murder and sentenced to five years to life in prison for the shooting death of Anthony Palacios.[1] Padilla's first parole grant hearing was held before the Board on July 27, 1988. At that hearing, one of the members of the Board recused herself because she was related to Padilla's victim, Palacios. She then sat in the audience during the hearing. Padilla filed a habeas corpus petition (the "first petition"), challenging the actions of that Board. The court of appeals ordered a new hearing, finding that although the particular Board member recused herself, all actions of that Board were tainted. *Padilla v. Utah Bd. of Pardons*, 839 P.2d 874 (Utah.Ct.App.1992).

Padilla's next parole grant hearing was held on December 11, 1992. As a result of that hearing, the Board set a new rehearing date for January 2003. In several of the

---

1. A more detailed account of the facts relating to Padilla's original conviction is contained in *State v. Padilla,* 776 P.2d 1329 (Utah 1989).

documents relating to the December 1992 hearing, the Board referred to it as a "re-hearing" instead of an original parole grant hearing. In May 1993, Padilla filed another habeas petition (the "second petition"), challenging the December 1992 hearing. In the second petition, Padilla argued that the Board erred in not granting him a "new" hearing as had been required by the court of appeals and in having only one officer appear at the hearing. While this petition was pending, and before this court's decision in *Labrum v. Utah State Board of Pardons*, 870 P.2d 902 (Utah 1993), the Board agreed to hold a new original parole grant hearing on October 29, 1993, to remedy any alleged deficiencies in the December 1992 hearing.

Padilla appeared before the Board for his third hearing on October 29, 1993, accompanied by his attorney. At the conclusion of the hearing, the Board announced that it would take the case under advisement and granted Padilla ten days in which to submit any additional information he thought might be relevant to the Board's decision. The Board further promised to inform Padilla of any additional relevant information that might come before the Board during that time and, if he had not already had the chance, to allow him to respond to any such information.

After the October 29 hearing, but before the Board issued its decision in Padilla's case, this court decided *Labrum*, 870 P.2d 902, on December 6, 1993. In *Labrum*, this court held that because an original parole grant hearing is analogous to a sentencing hearing conducted by a judge in a court of law, certain due process protections apply pursuant to article I, section 7 of the Utah Constitution. *Id.* at 911. Specifically, the court held that due process requires that inmates must be afforded "timely disclosure of the contents of their files (or reasonable summaries thereof) prior to conducting original parole grant hearings." *Id.* The court then addressed the issue of retroactivity and concluded that the benefits of its decision should extend not only to all future original

parole grant hearings but also to "any inmate who currently has a claim pending in the district court or on appeal before this court or the court of appeals challenging original parole grant hearing procedures on due process grounds." *Id.* at 914.

On December 14, 1993, the Board issued its decision setting Padilla's rehearing date for January 2003. Following the Board's decision and this court's decision in *Labrum*, Padilla moved to amend his second petition, which was still pending in district court, to include claims based on *Labrum*. However, in May 1994, the district court denied Padilla's motion to amend and dismissed Padilla's second petition as moot on the ground that the Board had granted Padilla the October 29, 1993, hearing to rectify any procedural problems allegedly occurring at the December 1992 hearing. Padilla has never appealed that dismissal.

In July 1994, Padilla filed the petition for extraordinary relief at issue in this case, pursuant to rule 65B(b), (c), and (e) of the Utah Rules of Civil Procedure (the "third petition").[2] In that petition, Padilla made numerous claims that his due process rights had been violated in relation to the October 29, 1993, hearing, including the following: (1) The lack of a procedure by which a direct appeal of Board decisions can be sought violated due process rights; (2) the Board's refusal to allow Padilla to examine his file denied him due process of law under *Labrum*; (3) the Board's refusal to let Padilla's attorney speak for him during the hearing denied Padilla the right to effective assistance of counsel; (4) the Board denied Padilla due process of law by failing to provide a detailed written rationale for its decision; and (5) the Board's performance of the sentencing function, which is inherently a judicial function, violated the separation of powers doctrine. In July 1995, the district court denied the petition, and Padilla appealed to this court.

2. Rule 65B was substantially amended, effective July 1, 1996. However, Padilla's third petition was filed in 1994 and was governed by the version of rule 65B existing at that time. Therefore,

unless otherwise noted, all references to rule 65B in this opinion are to the version that became effective May 1, 1993.

On appeal, Padilla argues that the trial court incorrectly ruled that Padilla's third petition was governed by rule 65B(e) but not by 65B(b) or (c) of the Utah Rules of Civil Procedure. Padilla further argues that he is entitled to the benefits of the *Labrum* decision because the Board's final decision was made eight days after *Labrum* was issued. Alternatively, Padilla contends that *Labrum* applies because his second petition was still pending in district court at the time *Labrum* was decided. Padilla also repeats the five claims, listed previously, which he made in his petition to the district court and argues in addition (1) that the Board did not make an adequate inquiry into the merits of the case because it reached the same rehearing decision after the October 29, 1993, hearing as it did following the December 1992 hearing; (2) that he was denied due process because he did not have the opportunity to confront his accusers and present evidence at the hearing; and (3) that the Board's decision was arbitrary and capricious, thereby justifying a substantive review of the Board's decision.

**STANDARD OF REVIEW**

■ When reviewing the dismissal of a petition for a writ of habeas corpus, "we accord no deference to the conclusions of law that underlie the dismissal. They are reviewed for correctness." *Neel v. Holden,* 886 P.2d 1097, 1100 (Utah 1994). Further, "while 'we must review the fairness of the *process* by which the Board undertakes its sentencing function, . . . we do not sit as a panel of review on the result.'" *Id.* at 1100 (quoting *Lancaster v. Utah Bd. of Pardons,* 869 P.2d 945, 947 (Utah 1994)).

**ANALYSIS**

**I. RULE 65B**

■ Padilla first argues that the district court incorrectly concluded that his third petition was governed only by rule 65B(e) of the Utah Rules of Civil Procedure. Padilla argues that both subsections (b) and (c) of rule 65B are also applicable. In *Renn v. State Board of Pardons,* 904 P.2d 677, 682 (Utah 1995), we held that the writ of habeas corpus is available only to a petitioner challenging the legality of his or her detention, the lawfulness of the court-imposed sentence, or the conditions of his or her imprisonment. We also stated, "Rule 65B(c) cannot be used to challenge Board actions that might be challenged under Rule 65B(e)." *Id.* at 683.

Here, plaintiff challenges the Board's actions under 65B(b), (c), and (e), alleging that the Board denied him his right to due process. Because these challenges do not involve the legality of his detention, the conditions of his imprisonment, or a *court*-imposed sentence, the writ of habeas corpus is not available. His claims challenging actions taken by the Board of Pardons are reviewable only under 65B(e). *Id.* at 683, 685. Accordingly, we agree with the district court's conclusion in that regard and review only his 65B(e) claim.

**II. APPLICABILITY OF *LABRUM***

■ Padilla argues that he is entitled to the benefits of the due process protections articulated by this court in *Labrum,* 870 P.2d 902. As stated above, this court held in that case that the Board must provide an inmate with "adequate notice to prepare for a parole release hearing, and . . . copies or a summary of the information in the Board's file on which the Board will rely." *Id.* at 904. The court then held that its decision would apply to all original parole grant hearings held on or after the date of the decision and also to "any inmate who currently has a claim pending in the district court or on appeal before this court or the court of appeals challenging original parole grant hearing procedures on due process grounds." *Id.* at 913–14.

■ Padilla presents two arguments to support his claim that this case falls within the reach of *Labrum.* First, he claims that even though the Board held his original parole grant hearing on October 29, 1993, more than a month before *Labrum* was decided, the Board did not actually make its decision until December 14, 1993, eight days after *Labrum* was decided. This argument is unavailing. As the term plainly implies, a "hearing" contemplates a forum where parties to a matter have the opportunity to be heard. *See Black's Law Dictionary* 852 (4th

ed.1968). This interpretation is clearly supported by sections of the Utah Code relating to Pardons and Parole. Section 77–27–5(1)(c) of the Utah Code (emphasis added)[3] states, "No restitution may be ordered, . . . no parole, pardon, or commutation granted or sentence terminated, except after a full hearing before the board or the board's appointed examiner *in open session.*" Later, the Code states, "The [Board] shall determine . . . a date upon which the *offender shall be afforded a hearing* to establish a date of release or a date for a rehearing, and shall promptly notify the offender of the date." Utah Code Ann. § 77–27–7(1) (emphasis added). When the Code addresses the issue of victims attending the hearing, it specifically states, "As used in this section, 'hearing' means a hearing for a parole grant or revocation, or a hearing of either of these *if the offender is present.*" Utah Code Ann. § 77–27–9.5(1)(a) (emphasis added). Thus, the "hearing" contemplated by *Labrum* where due process protections may apply is the original parole grant hearing at which the offender has the opportunity to appear before the Board in open session to discuss issues relating to the setting of the offender's parole or rehearing date. The *Labrum* protections, therefore, do not apply to the Board's closed-door deliberations held after such hearing. Thus, we reject Padilla's contention that *Labrum* applies to this case because the Board made its final decision after *Labrum* was decided.

Padilla's second argument in support of applying *Labrum* to this case is that when *Labrum* was decided, Padilla's second petition was pending in district court. This argument also fails, however. Padilla's second petition, which was pending at the time *Labrum* was decided, challenged the actions of the Board in relation to his December 11, 1992, hearing, not his October 29, 1993, hearing. All of the issues in the matter before us, however, relate only to the Board's actions regarding the 1993 hearing. The actions of the Board in relation to the 1992 hearing are not properly before us. Padilla argues that *Labrum* should still apply be-

cause he moved to amend his second petition to include *Labrum* claims relating to the 1993 hearing. However, the district court refused to allow the amendment and dismissed Padilla's second petition as moot because the Board granted Padilla a new hearing (i.e., the October 29, 1993, hearing) to resolve the concerns Padilla raised in his second petition. If Padilla disagreed with the denial of his motion to amend and the dismissal of his second petition, he should have appealed. Since he did not, we refuse to address these arguments.

## III. DUE PROCESS AND OTHER ALLEGED CONSTITUTIONAL VIOLATIONS

Padilla attributes to the Board numerous due process and other constitutional violations regarding his October 29, 1993 hearing. However, several of the issues Padilla raises were inadequately briefed, while others have already been clearly addressed by this court.

■ Padilla argues that the power exercised by the Board when it makes parole determinations is essentially the power to sentence. The power to sentence, Padilla asserts, is a judicial power and thus the Board's wielding that power is a violation of the separation of powers doctrine as found in article V, section 1 of the Utah Constitution. Padilla's argument is flawed, however. Initially, we point out that the Board's power itself is constitutionally derived. Article VII, section 12 of the Utah Constitution states, with emphasis added, that the Board, "*upon such conditions as may be established by the Legislature,* may remit fines and forfeitures, *commute punishments, and grant pardons after convictions.*"

We do not recognize or acknowledge that the Board has the constitutional power to sentence a convicted criminal. The power to execute sentences remains in the exclusive control of the judiciary, which is bound by statutory limitations. The legislature has provided:

---

**3.** These references refer to the Utah Code as it appeared in 1993, when Padilla's hearing was

held.

(1) Whenever a person is convicted of a crime and the judgment provides for a commitment to the state prison, *the court* shall not fix a definite term of imprisonment unless otherwise provided by law.

(2) The sentence and judgment of imprisonment [*as set by the court*] shall be for an indeterminate term of not less than the minimum and not to exceed the maximum term provided by law for the particular crime.

(3) Except as otherwise expressly provided by law, every sentence, regardless of its form or terms, which purports to be for a shorter or different period of time, shall be construed to be a sentence for the term between the minimum and maximum periods of time provided by law *and shall continue until the maximum period has been reached unless sooner terminated or commuted by authority of the Board of Pardons and Parole.*

Utah Code Ann. § 77–18–4 (1995) (emphasis added).

■ Therefore, while the courts have the power to sentence, the Board has been given the power to pardon and parole. These are two separate and distinct powers, neither of which invades the province of the other. Under our indeterminate sentencing scheme, a court *must* set an indeterminate sentence as provided by statute. By its very term, the "indeterminate" sentence shall continue until the maximum period expires *unless* the Board, in its discretion, terminates or commutes the punishment or pardons the offender.[4]

Because of the very nature by which our indeterminate sentencing scheme functions, it is true that, in reality, the Board " 'determines the actual number of years a defendant is to serve.' " *Labrum,* 870 P.2d at 907

(quoting *Foote v. Utah Bd. of Pardons,* 808 P.2d 734, 735 (Utah 1991)). We noted in *Labrum* that "by acknowledging in *Foote* that the parole function is a complex, multi-dimensional proceeding *which includes sentencing,* we have opened the door to a more extensive review of the constitutional adequacy of procedures that the Board, and probably the legislature, would prefer to exclude from such review." *Id.* at 911 (emphasis added). Clearly, the Board's setting a parole date, which may occur sometime between the statutory minimum and maximum periods, operates to establish a fixed, or determinate, period of time during which the offender will serve his or her sentence. Nevertheless, the fact that the Board has been given this power does not mean that the Board exercises a "sentencing" power. Rather, the Board merely exercises its constitutional authority to commute or terminate an indeterminate sentence that, but for the Board's discretion, would run until the maximum period is reached. Therefore, we hold that the Board's exercise of its parole power in setting determinate parole dates does not violate the separation of powers doctrine of article V, section 1 of the Utah Constitution.

■ Padilla claims that because the Board granted him the same rehearing date following both the 1992 and the 1993 hearings, despite the fact that the rationale sheets utilized by the Board at each hearing were slightly different, an adequate inquiry into the merits of his case could not have been made. Analysis of this claim, however, would require this court to engage in a substantive review of the Board's decision, which we have consistently refused to do. *See Neel,* 886 P.2d at 1100 (citing *Lancaster,* 869 P.2d at 947). Padilla also claims that the preprinted rationale sheets, on which the

---

**4.** *See* Utah Code Ann. § 77–27–9(1)(a) (Supp. 1996) ("The Board of Pardons and Parole *may* pardon or parole any offender or commute or terminate the sentence of any offender committed to a penal or correctional facility under the jurisdiction of the Department of Corrections for a felony or class A misdemeanor except as provided in Subsection (2)." (emphasis added)); *see also State v. Nemier,* 106 Utah 307, 148 P.2d 327, 331 (1944) (indeterminate sentence was definite sentence for maximum term therein stated, unless commuted or terminated or prisoner was

paroled or pardoned by board of pardons); *Cardisco v. Davis,* 91 Utah 323, 64 P.2d 216, 217 (1937) (board of pardons has jurisdiction and authority to fix and determine time person shall serve when sentenced under former indeterminate sentence law at any period equal to or less than maximum penalty provided by law); *State v. Roberts,* 91 Utah 117, 63 P.2d 584, 585 (1937) (sentence under former indeterminate sentencing law was for maximum period or term prescribed for particular offense unless sooner terminated or commuted as provided by law).

Board checks off "mitigating" and "aggravating" factors it deems relevant in making the parole determination, do not provide a detailed enough explanation of the Board's actions to satisfy due process. We disagree. In *Preece v. House*, 886 P.2d 508 (Utah 1994), we held that the Board must comply with its own rules. *Id.* at 511–12; *see also Monson v. Carver*, 928 P.2d 1017, 1031 (Utah 1996). At the time of the 1993 hearing, the Board's rules required simply, "The decision of the Board shall be reduced to writing, including the rationale for the decision." Utah Admin. Code R671–305–1 (1993). In *Monson*, we held, "While perhaps not a perfect explanation of the Board's rationale, this document [i.e., the rationale sheet] nonetheless satisfies the Board's own requirement that it provide a written explanation of the reasons for its decision." *Monson*, 928 P.2d at 1031. Because our opinion has not changed since *Monson*, we conclude that the rationale sheets used by the Board to explain its parole decision were adequate and did not deprive Padilla of due process.

■ Padilla next argues that he was denied effective assistance of counsel because the Board did not allow Padilla's attorney to speak for him or confer with him "during portions" of the hearing.[5] We stated in *Monson*, "Because it is well settled that the [United States Constitution's] Sixth Amendment right to counsel is not implicated in noncriminal proceedings, *Neel*, 886 P.2d at 1103, we hold that the amendment does not require the effective assistance of counsel at parole grant hearings." 928 P.2d at 1029. Padilla's claim also fails under article I, section 7 of the Utah Constitution. In *Neel*, we stated that "the touchstone of due process [under article I, section 7] in the context of parole hearings is whether the proposed procedural due process requirement substantially furthers the accuracy and reliability of the Board's fact-finding process." 886 P.2d at 1103. In that case, we held that the petitioner's due process rights were not violated, because he had "failed to show how the further participation of counsel at the hearing

would have affected the accuracy of the information considered by the Board." *Id.; see also Monson*, 928 P.2d at 1030.

The same is true in the case before us. Padilla simply asserts that some kind of increased participation by his attorney "would have allowed Mr. Padilla the meaningful opportunity to prepare to rebut inaccurate information relied on by the Board." However, Padilla fails to state what "inaccurate information" he is referring to or, specifically, how additional participation by his attorney would have helped the fact-finding process. In any event, Padilla's factual claims *on this issue appear to be simply incorrect in* light of the fact that Padilla's attorney did get the opportunity to address the Board openly near the conclusion of the hearing.

Padilla asserts that he was denied due process because he was not allowed to confront his accusers and present evidence at his hearing. However, not only has Padilla completely failed to allege any specific instance where he could have but was not allowed to *confront his accusers or present evidence,* the record clearly demonstrates that exactly the opposite was true. At the very outset of the hearing, Don Blanchard, the member of the Board conducting the hearing, stated, "I will note any and all information you wish to provide at this hearing, and give you an opportunity to raise any concerns, to make any comments that you feel are directly relevant to your case." Later, Blanchard stated, "I am going to share with you every bit of information that is contained in your file, pursuant to our rules and the provisions for our conducting of hearings, ... on which we are going to rely, or which will impact our decision." Still later, Blanchard told Padilla, "You are welcome to ask questions, to clarify any of the information that I review, to make comment on it, and to later on in the hearing speak in your own behalf." During the hearing, two relatives of Padilla's victim were allowed to address the Board. At the conclusion of their testimonies, Blanchard asked, "Mr. Padella [sic], you have heard the vic-

---

5. Padilla also claimed that his attorney should have been granted "adequate pre-hearing access *to the information to be relied on by the Board."* However, as we have already determined, *Lab-* *rum* did not apply to Padilla's 1993 hearing, and therefore, no right to the information in the file existed.

tim's testimony that's been provided, ... would you like to respond to that testimony?" Padilla then proceeded to respond. Finally, near the conclusion of the hearing, Blanchard granted Padilla ten more days to submit to the Board any additional information which Padilla deemed relevant. Blanchard concluded by promising Padilla that if any information that could impact the Board's decision was submitted by other parties during that ten-day period, the Board would then allow Padilla the opportunity to respond to such information. In the face of all this evidence, it is absurd for Padilla to argue that he was not permitted to confront his accusers or present evidence at his hearing.

■ Padilla claims that section 77–27–5(3) of the Utah Code, which terms all Board decisions "final" and "not subject to judicial review," is unconstitutional. Padilla claims that the section violates both article I, section 12 of the Utah Constitution, which guarantees the right to appeal in all criminal prosecutions, and article I, section 7 of the Utah Constitution, which guarantees due process of law. However, because an original parole grant hearing is not a criminal proceeding, article I, section 12 by its own terms does not apply. Further, we have already addressed the appealability issue numerous times and have never found it to run afoul of the Utah Constitution. *See, e.g., Preece*, 886 P.2d at 512; *Foote*, 808 P.2d at 735. As we stated in *Preece*, the statute precluding direct appeal of Board decisions "does not preclude judicial review of such decisions by way of extraordinary writ. *Foote*, 808 P.2d at 735. However, our review is limited to the '*process* by which the Board undertakes its sentencing function.' " *Preece*, 886 P.2d at 512 (quoting *Lancaster*, 869 P.2d at 947).

■ Finally, Padilla claims that the Board's actions were arbitrary and capricious and, therefore, we should review the Board's substantive decision, not just the procedure that it employed. We stated in *Preece* that "so long as the period of incarceration decided upon by the [Board] falls within an inmate's applicable indeterminate range, e.g., five years to life, then that decision, absent unusual circumstances, cannot be arbitrary and capricious." 886 P.2d at 512. To sup-

port his argument, Padilla asserts that the Board has had a history of "doggedly refusing" Padilla his due process rights, that the rationale sheets used by the Board were insufficient, and that Padilla has been an "exemplary inmate" since his incarceration. These do not constitute sufficiently unusual circumstances to justify review of the Board's substantive decision, however. Padilla has failed to back up his first assertion with any evidence whatever. Moreover, we have already determined that the Board's use of the rationale sheets in this case was proper. Further, Padilla's claim that he has been an exemplary inmate is irrelevant. We find nothing to suggest that the Board's actions in this case have been arbitrary and capricious, and therefore, we refuse to review the substantive decision of the Board.

## CONCLUSION

In light of the foregoing, we affirm the district court's dismissal of Padilla's petition for extraordinary relief.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur in Justice RUSSON's opinion.