**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HENRY J. SUAREZ,

      Plaintiff - Appellant,

v.

UTAH BOARD OF PARDONS &
PAROLE; MICHAEL LEAVITT,
Governor of the State of Utah; and the
UTAH STATE LEGISLATURE,

      Defendants - Appellees.

No. 02-4162
(D.C. No. 2:01-CV-637-K)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **HENRY** and **HARTZ**, Circuit Judges.

Henry J. Suarez, appearing pro se, is a Utah state prisoner appealing the

district court's dismissal of his complaint. Suarez alleged that, in violation of 42

U.S.C. § 1983, (1) the Utah Board of Pardons and Parole ("Board") violated his

federal due process rights by holding an original parole hearing to determine the

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

length of his sentence without giving him notice of, or an opportunity to be heard or present at, the hearing; (2) the procedures used by the Board generally in making parole decisions violate the requirements of due process; (3) the Governor and the Utah State Legislature have conspired to deny Suarez's due process rights by failing to properly oversee the Board's operation and correct the unconstitutional procedures; and (4) the Board discriminates on the basis of religion when making parole decisions. (ROA doc. 2.) The district court dismissed these claims pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires a court to dismiss any claims in a complaint filed in forma pauperis that are frivolous, malicious, or fail to state a claim upon which relief can be granted. Suarez contends that it was error for the district court to dismiss these claims. We AFFIRM in part and REVERSE in part the district court's order of dismissal and REMAND.

## I. THE DUE PROCESS CLAIMS

On February 28, 1998, Suarez was sentenced to prison for a first degree felony.[1] Under Utah's indeterminate sentencing system, "the trial judge is

---

[1]The record does not disclose the crime Suarez was convicted of or the sentence imposed by the trial court.

required to impose the statutorily prescribed range of years and then the Board of Pardons decides the length of time a person is confined." Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir. 1994). Suarez alleges that the Board held an original hearing in his case in February 2000, at which it considered his offense and the evidence against him. As a result of that hearing, the Board determined that February 2006 was the first time that he would be considered for parole.

Suarez argues that the Board's actions violated his federal due process rights in several respects. Most significantly, he contends that his due process rights were violated because the Board did not notify him of the hearing, give him any opportunity to appear at the hearing, or inform of the information considered by the Board in making its decision. (Aplt. B. at 7–8.) But Suarez also contends more generally that the Board failed to follow required procedures when it scheduled the hearing at which his parole would be first considered. (Id. at 16–17.) Citing Malek, the district court dismissed these arguments as failing to state a claim upon which relief could be granted because Utah's parole statute does not create a liberty interest entitling prisoners to federal constitutional protection. Order of Aug. 8, 2002, at 2.

Reviewing the district court's dismissal of Suarez's due process claims de novo, see Perkins v. Kansas Department of Corrections, 165 F.3d 803, 806 (10th Cir. 1999) ("[A] de novo standard should govern review of dismissals under

§ 1915(e)(2)(B)(ii)."), we affirm the dismissal of these claims. As the district court correctly noted, we have previously ruled that the Utah parole statute creates no legitimate expectation of release because the Board has "complete discretion in making parole decisions." Malek, 26 F.3d at 1016. In Malek, we expressly held that the Utah parole statute "does not create a liberty interest entitling [Utah prisoners] to due process protection under the Fifth and Fourteenth Amendments of the United States Constitution and thus cannot be used as a basis for relief under § 1983." Id.

It is true, as Suarez points out, that the Utah Supreme Court has imposed, pursuant to state law, due process requirements for the original hearings conducted by the Board. See, e.g., Labrun v. Utah State Bd. of Pardons, 870 P.2d 902, 911 (Utah 1993) ("For purposes of original parole grant hearings at which predicted terms of incarceration are determined, fundamental principles of due process under article I, section 7 of the Utah Constitution apply."). However, "a violation of state law alone does not give rise to a federal cause of action under § 1983." Malek, 26 F.3d at 1016. Although Suarez tries to craft a federal cause of action out of the Utah courts' past characterization of the Board as functioning like a sentencing court when it holds an original hearing, see, e.g., Foote v. Utah Bd. of Pardons, 808 P.2d 734, 735 (Utah 1991), this attempt fails. Since its decision in Foote, the Utah Supreme Court has backed away from the analogy that

- 4 -

the Board acts like a sentencing court when it holds the original hearing.  In

Padilla v. Utah Board of Pardons & Parole, 947 P.2d 664 (Utah 1997), the Utah

Supreme Court stated that "[w]e do not recognize or acknowledge that the Board

has the constitutional power to sentence a convicted criminal." Id. at 668.  The

court explained that, under Utah's system, "while the courts have been given the

power to sentence, the Board has been given the power to pardon and parole.

These are two separate and distinct powers . . . ." Id. at 669.  Simply stated, "the

Board merely exercises its constitutional authority to commute or terminate an

indeterminate sentence that, but for the Board's discretion, would run until the

maximum period is reached." Id.  Because a prisoner's sentence is reduced to

something less than the maximum period only at the discretion of the Board,

prisoners have no legitimate expectation of release and, accordingly, there is no

basis for a due process claim arising from the Board's procedures. Malek, 26

F.2d at 1016.


## II.  THE CONSPIRACY CLAIM

Although Suarez raised his conspiracy claim below, the district court failed

to specifically address it in its order dismissing the complaint.  We will assume

that the district court dismissed this portion of the complaint pursuant to

§ 1915(e)(2)(B)(ii) for failure to state a claim, and we therefore review the

dismissal de novo.  See Perkins, 165 F.3d at 806.  We conclude that Suarez does indeed fail to state a claim and affirm the dismissal of this count of the complaint.

Suarez alleges that Governor Leavitt and the Utah State Legislature conspired to deprive him of his due process rights.  Specifically, he claims that the Governor and the Legislature had the power and responsibility to oversee the Board, knew the Board was acting in ways that violate prisoners' federal due process rights, and failed to take action to correct the Board's abuses.  (Aplt. B. at 20–22.)  Even assuming that these allegations are true, they do not amount to a claim of a conspiracy to deprive him of his due process rights.

We have explained that

> [a] conspiracy is a combination of two or more persons acting in concert to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.  The evidence must show circumstances to warrant a jury finding that the conspirators had a unity of purpose or a common design and understanding.

United States v. Metro. Enters., 728 F.2d 444, 450–51 (10th Cir. 1984).  In this case, Suarez does not allege an unlawful purpose.  As we determined in Part I, supra, the procedures of the Board do not violate any federal due process rights that Suarez might possess.  The governor and the legislature could not, therefore, have had an unlawful purpose in permitting the Board's procedures to continue.[2]

---

[2]Not relevant here is the possibility that conspirators can use unlawful means to achieve a lawful purpose.  Suarez's sole contention is that the Governor

(continued...)

- 6 -

In addition, we note that Suarez has made no allegations "that the conspirators had a unity of purpose of a common design and understanding." He merely alleges that both the Governor and the Legislature were aware of constitutionally impermissible procedures used by the Board and failed to act to correct them. He makes no allegations that the Governor and the Legislature agreed to take this course, or even that each took this course with the knowledge that the other would deliberately avoid correcting the alleged constitutional violations. There is no allegation of an agreement, either one that is explicit or that can be inferred from the facts of the case, to achieve a common purpose. Indeed, we are skeptical that an allegation that a governor conspired with a legislature could ever amount to an actionable conspiracy claim. While the Governor, an individual, might be shown to have agreed with another to a course of deliberate indifference to constitutional violations by a state agency, we do not see how one could allege that the Legislature, a body composed of many individuals, each with equal voting power and no one speaking for the whole, could be said to agree with the Governor to such "deliberate indifference." We cannot conceive of the form such agreement would take.

---

[2](...continued)
and the Legislature have conspired to accomplish the unlawful purpose of depriving him of his due process rights.

- 7 -

We affirm the dismissal of Suarez's conspiracy claim pursuant to § 1915(e)(2)(B)(ii).

## III. THE RELIGIOUS DISCRIMINATION CLAIM

The district court dismissed as frivolous under § 1915(e)(2)(B)(i) and dismissed with prejudice Suarez's claim that the Board discriminates on the basis of religion, and we review such decisions for abuse of discretion. See McWilliams v. Colorado, 121 F.3d 573, 574–75 (10th Cir. 1997).

The district court found that Suarez's allegations were unsupported by specific facts and did not contain a claim that he had been personally injured by the alleged religious discrimination. Suarez, however, made additional factual allegations in his opening brief before this court, from which we conclude he could have amended his complaint to demonstrate he had standing to assert viable Establishment Clause and Equal Protection Clause claims. See Reynoldson v. Shillinger, 907 F.2d 124, 126 (10th Cir. 1990) (holding that a *pro se* prisoner's complaint should not be dismissed without leave to amend a potentially curable defect in standing). Here, however, Suarez never requested leave to amend his religious discrimination claim in any post-judgment motion before the district court. When his complaint was dismissed, Suarez did not file a motion to alter or amend the judgment under Rule 59(e) or for relief from the judgment under Rule

60(b).  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001) (noting that litigants have post-judgment procedural safeguards to avoid erroneous *sua sponte* dismissals of complaints under § 1915).  Under these circumstances, we ordinarily would affirm the district court's dismissal of Suarez's religious discrimination claim.  Our disposition of a related case, however, counsels us to remand this issue to the district for a hearing.

In Longyear v. Utah Bd. of Pardons & Parole, No. 02-4159, 2003 WL 21308900 (10th Cir. June 5, 2003) (unpublished), the defendant, Longyear, also a Utah state prisoner, raised a religious discrimination claim identical to Suarez's.  Id. at *2.  As in Suarez's case, the district court dismissed Longyear's religious discrimination claim because it failed to cite specific facts in support of the allegation.  Although we concluded in Longyear's case that it was not appropriate for the district court to have dismissed the complaint with prejudice, we affirmed the district court's dismissal because Longyear failed to file post-judgment motions under Rule 59(e) or Rule 60(b) seeking to amend his complaint to plead his religious discrimination claim with greater specificity.  Id.

After our Order and Judgment in Longyear's case was entered, Longyear filed a petition for rehearing.  In it, he claims that he could not have filed the post-judgment motions we cited because he was not aware that such motions could be made.  He claims he was ignorant of the possibility of making the

motions because the legal materials made available to him in prison do not include the Federal Rules of Civil Procedure. We have entered an order in Longyear's case remanding it to the district court for the sole purpose of holding a hearing and making findings on the question of whether Longyear had access to the Federal Rules of Civil Procedure. If he did not, we have ordered the district court to excuse his failure to file Rule 59(e) or 60(b) motions and permit Longyear to amend the religious discrimination claim in his complaint. If he did have access to the Rules, we have instructed the district court to enter an order indicating that Longyear's failure to file the relevant post-judgement motions is not excused. In that event, the district court's order of dismissal will stand pursuant to our initial Order and Judgment in Longyear's case.

We believe that we should take the same course with respect to Suarez's religious discrimination claim. As we have stated, it is virtually identical to the claim made by Longyear, it was dismissed by the district court for the same reason that Longyear's claim was dismissed, and we have no doubt that if we affirm the district court's dismissal of Suarez's discrimination claim with prejudice, Suarez will file a petition for rehearing stating that he, too, did not have access to the Federal Rules of Civil Procedure.

Accordingly, we reverse the district court's dismissal of Suarez's religious discrimination claim and remand to the district court for a hearing and to make

findings regarding whether Suarez had access to the Federal Rules of Civil Procedure, and specifically Rules 59 and 60. If the district court finds that Suarez did not have access to those rules, then the court should conclude that his failure to make post-judgment motions seeking leave to amend his religious discrimination claim is excused. In that case, the district court should permit Suarez to replead his religious discrimination claim with greater specificity. If, however, the district court finds that Suarez did have access to Rules 59 and 60, the court may reenter an order dismissing the religious discrimination claim with prejudice.

## IV. CONCLUSION

We AFFIRM the district court's dismissal of Suarez's due process and conspiracy claims. We REVERSE the district court's dismissal of Suarez's religious discrimination claim and REMAND to the district court for proceedings consistent with this Order and Judgment.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

**02-4162, <u>Suarez v. Utah Board of Pardons and Parole</u>**

**HENRY**, **J.**, concurring in part and dissenting in part.


I join the majority in affirming the district court on all but the religious discrimination claim. As the majority notes, the appeal in <u>Longyear v. Utah Bd. of Pardons & Parole</u>, No. 02-4159 (10th Cir. June 5, 2003) (unpublished order and judgment), presented similar issues. In that case, as here, I would have held that the district court erred in dismissing the religious discrimination claim with prejudice and as frivolous.

If <u>Longyear</u> had been a published opinion, its precedential status would have required me to set aside my concerns and to vote with the majority in this case. Because our rules specifically provide for unpublished orders and judgments that "are not binding precedents, except under the doctrines of law of the case, res judicata, and collateral estoppel," 10th Cir. R. 36.3(A), and because citation to such orders and judgments is "disfavored," 10th Cir. R. 36.3(B), I believe that this panel retains its discretion to reach an outcome contrary to that reached in <u>Longyear</u>. For the reasons stated in my separate opinion in that case, I therefore restate my conclusion that the religious discrimination claim in this case should have been dismissed without prejudice (and was certainly not frivolous).

As the majority here notes, in <u>Longyear</u> we remanded to the district court for findings regarding the availability of the Federal Rules of Civil Procedure (specifically, the text of Rules 59 and 60). We did so because of the possibility that the majority might reach a different conclusion regarding the district court's handling of the religious discrimination claim. Because my proposed outcome does not require knowing whether the text of Rules 59 and 60 is available to Utah prisoners, my views are not dependent on the outcome of the proceedings on remand. Accordingly, I respectfully dissent from the majority's disposition of the religious discrimination claims.