2003 UT App 402

**James Harleston LINDEN, Petitioner and Appellant,**

v.

**STATE of Utah, DEPARTMENT OF CORRECTIONS; and State of Utah, Board of Pardons and Parole, Respondents and Appellees.**

**No. 20020912–CA.**

Court of Appeals of Utah.

Nov. 21, 2003.

---

Grant W.P. Morrison, Morrison & Morrison LC, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Patrick B. Nolan, Asst. Atty. Gen., Salt Lake City, for Appellees.

Before JACKSON, P.J., BILLINGS, Associate P.J., and GREENWOOD, J.

## OPINION

JACKSON, Presiding Judge:

¶ 1 James Linden appeals the district court's dismissal of his petition for extraordinary relief. We affirm.

## BACKGROUND

¶ 2 James Linden was convicted in Utah on September 19, 1987 of aggravated robbery,

theft, and possession of a firearm. At the time of his convictions, Linden was on parole for various offenses that he had previously committed in California. As a result of his Utah convictions, Linden's California parole was revoked and he was extradited to California to complete the term of his prior California sentence. After completing the term of imprisonment due in California, Linden was transferred to the Utah State Prison to serve the sentences that had been imposed for his 1987 crimes.

¶ 3 On January 26, 1996, Linden was placed on parole by the Utah Board of Pardons and Parole (the Board). He subsequently violated the terms of this parole, however, and his parole was revoked. On January 27, 1998, he was again paroled from the Utah State Prison. As a condition for his release on parole, Linden was required to sign a parole agreement. Condition three of that agreement (condition three) required Linden to promise that "I will obey all State, Federal, and municipal laws."

¶ 4 On December 22, 1998, Linden was arrested by Idaho authorities on charges relating to a murder that had been committed there in 1986. In July 1999, Linden pleaded guilty to one count of accessory to murder in the first degree in violation of Idaho Code section 18–205 (1994). Pursuant to that plea, Linden admitted to having knowledge that the murder had been committed and to having withheld and concealed that knowledge from law enforcement authorities. As a result of this plea, Linden was sentenced to a determinate term of two years imprisonment, with credit for time served.

¶ 5 Upon completion of his Idaho sentence, Linden was extradited back to Utah and charged with having violated the conditions of his parole. The parole violation report prepared by Utah authorities alleged that Linden had violated "condition number three of the Parole Agreement." On August 30, 2000, the Board held a parole revocation hearing. On October 3, 2000, the Board issued an order revoking Linden's parole. The Board's order stated that the reason for the parole revocation was a "parole agreement violation." On May 14, 2001, Linden filed a petition for extraordinary relief with

the district court. That petition was dismissed by the court on October 11, 2002. Linden appeals.

## STANDARD OF REVIEW

¶ 6 When reviewing an appeal from a dismissal of a petition for extraordinary relief, "we accord no deference to the conclusions of law that underlie the dismissal." *Neel v. Holden*, 886 P.2d 1097, 1100 (Utah 1994).

## ANALYSIS

¶ 7 Linden argues that the decision of the Board to revoke his parole based on his conviction in Idaho was unlawful, insofar as his violation of Idaho law allegedly occurred before he entered into the parole agreement with the State of Utah. In response, the State argues that we are precluded from reviewing the decision of the Board by Utah Code Annotated section 77–27–5(3) (1999).

¶ 8 Given its jurisdictional nature, we first address the State's argument that judicial review is inappropriate. We disagree with the State's contention on this point and instead conclude that we are constitutionally authorized to conduct a substantive review of the Board's parole revocation decisions. However, considering the particular facts of this case, we conclude that there was sufficient evidence for the Board to determine that Linden's ongoing criminal conduct in Idaho violated the conditions of his parole agreement and that the decision to revoke his parole was appropriate.

### I. Jurisdiction

¶ 9 Under the terms of Utah's indeterminate sentencing system, the Board is given a wide degree of discretion in determining how much of a sentence a convicted person must serve. The Utah Code thus states that "[t]he Board of Pardons and Parole shall determine ... when and under what conditions ... persons committed to serve sentences ... may be released upon parole ...." Utah Code Ann. § 77–27–5(1)(a) (1999). Explaining this statutory scheme, the Utah Supreme Court has stated that "the judge does not determine the number of

years the defendant will spend [in prison]. That is left to the unfettered discretion of the board of pardons." *Labrum v. Utah State Bd. of Pardons,* 870 P.2d 902, 908 (Utah 1993) (quoting *Foote v. Utah Bd. of Pardons,* 808 P.2d 734, 735 (Utah 1991)). Thus, "[i]n our indeterminate sentencing scheme, the board of pardons acts as a sentencing entity, having exclusive authority to 'determine[ ] the actual number of years a defendant is to serve.' " *Preece v. House,* 886 P.2d 508, 512 (Utah 1994) (second alteration in original) (citations omitted); *see also Rawlings v. Holden,* 869 P.2d 958, 961 (Utah Ct.App.1994) (noting that " 'our sentencing system vests almost complete discretion in the Board of Pardons to determine the period of time that will actually be served' ") (quoting *State v. Schreuder,* 712 P.2d 264, 277 (Utah 1985)).

■ ¶ 10 At issue in the present case is the extent to which the Board's discretionary determinations on revocation decisions can be judicially reviewed. The State argues that this question is controlled by section 77–27–5(3), which states that "[d]ecisions of the board in cases involving paroles, pardons, commutations or terminations of sentence ... are final and *are not subject to judicial review.*" (Emphasis added.) Accordingly, the State argues that we lack jurisdiction to review the merits of Linden's claim. We disagree.

¶ 11 In spite of section 77–27–5(3)'s non-reviewability dictate, Utah courts have clearly held that judicial review of the Board's decisions is appropriate in certain circumstances in order to ensure that the procedural rights afforded by the Utah Constitution's Due Process Clause are protected. In *Labrum,* the Utah Supreme Court thus held that review was appropriate insofar as "due process pursuant to article I, section 7 of the Utah Constitution requires that the inmate know what information the Board will be considering at the hearing and that the inmate know soon enough in advance to have a reasonable opportunity to prepare responses and rebuttal of inaccuracies." 870 P.2d at 909 (footnote omitted). It is likewise clear, however, that the judicial review authorized by the Utah Constitution is limited. In *Lancaster v. Utah Board of Pardons,* the court

explained the scope of the procedural protections, therein holding that the review that is authorized by the Utah Constitution's Due Process Clause is limited to the *"process* by which the board undertakes its sentencing function." 869 P.2d 945, 947 (Utah 1994) (emphasis in original); *see also Padilla v. Utah Bd. of Pardons,* 947 P.2d 664, 669 (Utah 1997) (noting that "[a]nalysis of this claim ... would require this court to engage in a substantive review of the Board's decision, which we have consistently refused to do"); *Preece,* 886 P.2d at 512 (noting that courts " 'do not sit as a panel of review on the result.' ... [S]o long as the period of incarceration decided upon by the board of pardons falls within an inmate's applicable indeterminate range ... then that decision, absent unusual circumstances, cannot be arbitrary and capricious" (quoting *Lancaster,* 869 P.2d at 947)). Here, Linden asks us to conduct a substantive review of the Board's decision to revoke his parole. We find no clear Utah authority, however, that would indicate that Linden has a right to a substantive judicial review of the Board's decision under the terms of the Utah Constitution.

■ ¶ 12 Were this a petition for a review of an original parole grant decision, it is likewise clear that the United States Constitution would afford no avenue for judicial relief. Under the terms of our federal system, the states have the baseline authority to establish their own penal systems. The decision to establish a system of early release, while common among the states, is not required by any provision of the United States Constitution. Accordingly, in *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* the United States Supreme Court thus held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). As such, prisoners who are petitioning for an early release are simply hoping for a result that they have no constitutional right to demand or expect. Thus, "[t]he natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its

procedural safeguards, has extinguished that liberty right: '[Given] a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.' " *Id.* (quoting *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)) (second alteration in original).

■ ¶ 13 While the United States Supreme Court has thus acknowledged that a potential parolee does not have a liberty interest protectable under the United States Constitution's Due Process Clause, the Court has nevertheless stressed that former prisoners who have since been paroled do enjoy a conditional liberty interest that warrants constitutional protection. This was precisely the holding of the United States Supreme Court in *Morrissey v. Brewer,* wherein the Court recognized that, while a parolee does not enjoy the "absolute liberty to which every citizen is entitled," the fact that the state has already granted the prisoner a release from prison and allowed the rehabilitated prisoner to roam free in society does afford the prisoner a *"conditional liberty"* interest that is "properly dependent on observance of special parole restrictions." 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (emphasis added). Thus, "parole *release* and parole *revocation* are quite different. There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Greenholtz,* 442 U.S. at 9, 99 S.Ct. at 2105. While a prisoner facing an original parole grant hearing is not necessarily entitled to judicial review under the terms of the United States Constitution, a parolee who is

facing a parole revocation hearing is entitled to judicial review in order " 'to insure that the state-created right is not arbitrarily abrogated.' " *Vitek v. Jones,* 445 U.S. 480, 489, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980) (citation omitted).[1]

¶ 14 We accordingly conclude that, under the terms of the United States Constitution's Due Process Clause, judicial review of the Board's revocations decisions is authorized and that jurisdiction is therefore appropriate in the present case.

## II. Linden's Revocation

■ ¶ 15 In *Black v. Romano,* the United States Supreme Court set forth the terms of the constitutionally mandated revocation analysis as follows:

In identifying the procedural requirements of due process, we have observed that the decision to revoke probation typically involves two distinct components: (1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation.

471 U.S. 606, 611, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636 (1985).[2]

¶ 16 Here, Linden does not argue that the Board's decision to revoke his parole was improper under the second prong of the revocation analysis. Linden instead argues that, under the first prong, the decision of the Board was constitutionally flawed on the grounds that the Board lacked evidence to

1. Though the distinction between original parole grant hearings and revocation hearings has not been directly at issue in a Utah decision, the Utah Supreme Court has at least recognized in dictum that revocation proceedings are subject to a higher level of constitutional scrutiny than is involved in reviews of original parole grant hearings.

After a prisoner's liberty interest has been diminished to an expectation of release on a certain date, that interest revives either upon completion of the term fixed or upon a grant of parole before the fixed date. Once paroled, offenders have a liberty interest that is limited by the restrictions that govern parole; it is nevertheless a liberty interest which is entitled to due process protection.

*Neel v. Holden,* 886 P.2d 1097, 1101 (Utah 1994). Given the clear mandate of the United States Constitution's Due Process Clause, however, we need not decide today whether the Utah Constitution's Due Process Clause also affords a similar degree of protection to parolees who are faced with possible revocation.

2. Though *Black* discussed the revocation analysis in terms of probation decisions, it is well established that "revocation of probation ... is constitutionally indistinguishable from the revocation of parole." *Gagnon v. Scarpelli,* 411 U.S. 778, 782 n. 3, 93 S.Ct. 1756, 1759 n. 3, 36 L.Ed.2d 656 (1973).

conclude that Linden had actually violated a condition of his parole agreement. *Cf. Gagnon v. Scarpelli,* 411 U.S. 778, 784, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973) (stating that the two factors are "analytically distinct").

¶ 17 Under the first prong of the Supreme Court's bifurcated revocation analysis, it is clear that a decision to revoke a conditional grant of parole must be supported by evidence indicating that the parolee has actually violated one of the stated conditions of his or her parole. "Implicit in the system's concern with parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole." *Morrissey v. Brewer,* 408 U.S. 471, 479, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972). In allowing a prisoner to be released early, the state thus allows the parolee to rely on "an implicit promise that parole will be revoked *only* if he fails to live up to the parole conditions." *Id.* at 482, 92 S.Ct. at 2601 (emphasis added).

¶ 18 In *Douglas v. Buder,* the Supreme Court reversed a revocation decision based entirely on the first prong of the revocation analysis. *See* 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973). In *Douglas,* one of the conditions of the petitioner's probation agreement was that "[a]ll arrests for any reason" would be reported to the petitioner's probation and parole officer "without delay." *Id.* at 430, 93 S.Ct. at 2200 (alteration in original). Subsequent to his release, the petitioner was involved in a chain-reaction accident on the highway. *See id.* Along with four other persons, the petitioner was cited for driving too fast for existing conditions. *See id.* at 431, 93 S.Ct. at 2200. The petitioner did not report this citation to his probation officer for eleven days. *See id.* As a result of this failure, a judge determined that the petitioner had violated the terms of his probation and ordered that the petitioner's probation be revoked. *See id.*

¶ 19 On appeal, the petitioner argued that his receipt of a traffic citation did not constitute an "arrest" and that his probation therefore should not have been revoked. *See id.* The United States Supreme Court agreed, holding that the judge's finding that the petitioner had violated a condition of his probation was "so totally devoid of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment." *Id.* at 432, 93 S.Ct. at 2200. In response to the State's argument that the arrest statute could reasonably have been construed so as to include the traffic citation, the Court stated that "[w]hen ... [an] unforseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." *Id.* at 432, 93 S.Ct. at 2201 (alterations and omission in original).[3] Thus, under *Douglas,* it is clear that revocation decisions are judicially reviewable for the purpose of determining whether there was sufficient evidence to indicate that the parolee actually violated a condition of his parole. Absent such evidence, a revocation decision can and constitutionally must be overturned.

¶ 20 Here, Linden argues that there was insufficient evidence for the Board to conclude that he had violated condition three of his parole agreement. Linden argues that, by its express terms, condition three could only be violated by criminal behavior that occurred after he had actually been paroled. According to Linden, the Board's use of his conviction for being an accessory to the 1986 Idaho murder as evidence that he had violated his 1998 parole was therefore improper. We disagree.

¶ 21 Though Linden was implicated in an Idaho murder that occurred well before his parole in January 1998, the precise statutory

---

3. In addition to the constitutional protections discussed here, it also seems clear from the Utah Code that the Board lacks authority to revoke parole absent a showing that the parolee actually violated an enumerated condition of his or her parole. *See, e.g.,* Utah Code Ann. § 77–27–11(1) (1999) ("The board may revoke the parole of any person who is found to have *violated any condition* of his parole.") (Emphasis added.); Utah Code Ann. § 77–27–11(6) (1999) ("Parolees found to have *violated the conditions of parole* may, at the discretion of the board ... have restitution ordered, or be imprisoned again....") (Emphasis added.)

terms under which he pleaded guilty in Idaho indicate that his criminal behavior extended past January of 1998. Linden pleaded guilty of violating Idaho Code section 18–205 (1994), which makes it a crime to "willfully withhold or conceal" knowledge of a felony from "a peace officer, judge, magistrate, grand jury or trial jury." Under its clear terms, Linden not only violated the Idaho accessory statute through his conduct in 1986, but also by withholding his knowledge of that crime from Idaho authorities in the days, weeks, and years subsequent to the murder. Thus, when Linden was paroled in 1998, he was still under an affirmative duty to comply with the felony reporting requirements of Idaho law. His criminal failure to comply with those requirements extended throughout 1998 and resulted in his December 22, 1998 arrest by Idaho authorities.[4]

¶ 22 Thus, the Board's determination that Linden had violated condition three was not based on criminal behavior that predated his parole, but was instead appropriately based on criminal behavior that occurred after parole was granted. Given this violation of his parole agreement, we conclude that the Board acted within its discretion in determining that Linden should be recommitted to prison.

## CONCLUSION

¶ 23 We hold that revocation decisions of the Board of Pardons and Parole are substantively reviewable for the purpose of determining whether the decision to revoke parole was made in violation of the parolee's Due Process rights. Among the protections afforded by the Due Process Clause is the requirement that the State produce sufficient evidence to indicate that the parolee has actually violated a condition of his or her parole before revoking that parole. Having reviewed the facts of this case, we conclude that Linden did violate the conditions of his parole by continuing to withhold knowledge

of a murder from Idaho authorities after his parole had been granted. We therefore conclude that the Board's decision to revoke his parole was not made in violation of Linden's constitutional rights.

¶ 24 Accordingly, we affirm.

¶ 25 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and PAMELA T. GREENWOOD, Judge.

---

4. We wish to stress that, contrary to Linden's assertions, the duty to report that is at issue here did not arise under the rules or provisions of any particular Utah law. Instead, Linden's duty to report arose as a direct result of Idaho's accessory statute. Linden's continuing failure to report his knowledge of the Idaho murder constituted a violation of Idaho law; this violation, in turn, authorized the Board to revoke his parole. Our decision today should not be read so as to create a general rule requiring potential Utah parolees to report all instances of past misconduct, except where such reporting would otherwise be required by applicable law or agreement.