**2013 UT App 231**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
SHAYNE E. TODD,
Defendant and Appellant.

Memorandum Decision
No. 20110885-CA
Filed September 26, 2013

Third District, Salt Lake Department
The Honorable Randall N. Skanchy
No. 991906743

Debra M. Nelson, Attorney for Appellant
John E. Swallow and Laura B. Dupaix, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES JAMES Z. DAVIS and CAROLYN B. MCHUGH
concurred.

ORME, Judge:

¶1     Shayne Todd appeals the district court's denial of his motion to correct an illegal sentence under rule 22(e) of the Utah Rules of Criminal Procedure. We affirm.

¶2     In 2001, a jury convicted Todd of murder. As a result of the same episode, he also pled guilty to purchasing or possessing a dangerous weapon. He was subsequently sentenced to five years to life in prison for the murder conviction, and one to fifteen years in prison for the dangerous weapon conviction. The court ordered the sentences to run consecutively. Todd attempted to challenge his

convictions through both direct appeal and postconviction review, but he was unsuccessful.

¶3      The sentencing report prepared by Adult Probation and Parole following his convictions estimated that under the Utah Sentence and Release Guidelines (the Guidelines), Todd would serve a total of twenty-six-and-a-half years in prison. However, at his parole hearing in 2001 immediately following sentencing, Todd was informed that he would not be granted another parole hearing until 2029, thus virtually guaranteeing that he would be incarcerated for at least twenty-eight years. Nine years later, the Board of Pardons issued an order entitled "Special Attention Review," which determined that no change would be made to Todd's sentence and that his 2029 parole hearing date would remain in place. The Board's order listed the length of Todd's sentence for murder as "5–100 years." Todd filed a pro se motion under rule 22(e) of the Utah Rules of Criminal Procedure, arguing that the Board had altered his sentence and that the sentence was therefore illegal. The district court denied the motion. Todd appeals. We review the legality of a sentence for correctness. *State v. Thorkelson*, 2004 UT App 9, ¶ 9, 84 P.3d 854.

¶4      Rule 22(e) allows us to "correct an illegal sentence, or a sentence imposed in an illegal manner, at any time." Utah R. Crim. P. 22(e). Because there is no time bar under the rule, its use is "narrowly circumscribed," *State v. Telford*, 2002 UT 51, ¶ 5, 48 P.3d 228 (per curiam), and it cannot be used as "a veiled attempt to challenge the underlying conviction by challenging the sentence," *State v. Candedo*, 2010 UT 32, ¶ 9, 232 P.3d 1008. An "illegal sentence generally occurs in one of two situations: (1) where the sentencing court has no jurisdiction or (2) where the sentence is beyond the authorized statutory range." *Thorkelson*, 2004 UT App 9, ¶ 15.

¶5      Todd first argues that the Board's characterization of his sentence modified the sentence beyond its statutory range and was therefore illegal. He also argues that the modification violated his due process rights. We agree with the district court's assessment

that listing Todd's sentence as "5–100 years" for his murder conviction "is merely the numerical designation used by the Board of Pardons to reflect" his five-year-to-life sentence. The Utah Supreme Court has twice recognized the difficulty that life sentences present when real-world numerical calculations of a prisoner's sentence need to be made. *State v. Schreuder*, 712 P.2d 264, 277 (Utah 1985) ("Pointing out the obvious difficulty of carrying out a sentence of 'life minus thirty months,' the Court referred the matter to the Board of Pardons . . . . A similar reference is appropriate here.") (citing *State v. Jaramillo*, 481 P.2d 394, 395 (Utah 1971)); *Jaramillo*, 481 P.2d at 395 ("No elaboration is necessary to make apparent the difficulties that would be encountered in trying to determine and carry out a maximum sentence of life imprisonment, minus 30 months."). Indeed, the courts of this state have deferred to the Board when it comes to computing the actual numerical terms of a sentence to be served. *See Schreuder*, 712 P.2d at 277; *Jaramillo*, 481 P.2d at 395 ("The answer to this perplexity is to be found in practical common sense. Both the prison authorities and the Board of Pardons have available to them the total record of the defendant.").

¶6    We see no error in the Board's use of its numerical computation when calculating Todd's parole eligibility on his life sentence. In our view, such a designation appears to be one of "practical common sense." *See Jaramillo*, 481 P.2d at 395. The record is clear that the Board was not altering or modifying Todd's sentence. In fact, in the Board's order setting forth its numerical computation, the Board itself stated that "no change" had been made to Todd's custodial status. Because we determine that the Board did not alter Todd's sentence, there is no illegal sentence for us to correct and no due process concerns for us to address.

¶7    Todd also argues that his sentence is illegal because the Board exceeded its authority when it fixed a definite term within an indeterminate sentence, thus allegedly violating multiple provisions of the Utah Constitution. The Utah Supreme Court has already considered and rejected similar arguments. *See Telford*, 2002

UT 51, ¶¶ 2–3; *Padilla v. Board of Pardons*, 947 P.2d 664, 669 (Utah 1997). In *Padilla*, a prisoner challenged the Board's power to make parole determinations, claiming it violated the separation of powers doctrine found in article V, section 1 of the Utah Constitution. 947 P.2d at 668. The Court held that

> the fact that the Board has been given this power [to fix a parole date] does not mean that the Board exercises a "sentencing" power. Rather, the Board merely exercises its constitutional authority to commute or terminate an indeterminate sentence that, but for the Board's discretion, would run until the maximum period is reached.

*Id.* at 669. The Court also determined that "while the courts have the power to sentence, the Board has been given the power to pardon and parole. These are two separate and distinct powers, neither of which invades the province of the other." *Id.* The Court came to the same conclusion in another case in which a prisoner "attack[ed] the constitutionality of Utah's indeterminate sentencing scheme." *See Telford*, 2002 UT 51, ¶ 2. The *Telford* court, relying on *Padilla*, determined that there was "no basis for [the Court] to depart from [its] established precedent" and that indeterminate sentencing was indeed constitutional. *Id.* ¶ 3. We therefore conclude that "the Board's exercise of its parole power in setting determinate parole dates does not violate . . . the Utah Constitution" and that Todd's sentence is therefore not illegal on those grounds. *Padilla*, 947 P.2d at 669.

¶8    Finally, Todd argues that his right to due process under the Utah Constitution was violated when the Board set parole for a date beyond that anticipated by the Guidelines. The argument is doubtful, given that the Guidelines are, after all, only guidelines. *See Preece v. House*, 886 P.2d 508, 511 (Utah 1994) ("The state sentencing guidelines used by the board of pardons do not have the force and effect of law. Consequently, any 'expectation of release' derived from the guidelines is at best tenuous."). But in

any event this issue is not properly before us because we are limited in this appeal to considering issues related only to the legality of Todd's sentence. *See State v. Candedo,* 2010 UT 32, ¶ 9, 232 P.3d 1008. *See also Renn v. Board of Pardons*, 904 P.2d 677, 680, 685 (Utah 1995) (determining that rule 65B of the Utah Rules of Civil Procedure is the proper avenue for challenging the postponement of a parole hearing beyond the time frame recommended in the Guidelines). We therefore decline to address it.

¶9     Affirmed.

———————